Ridge v. Prather.

---

## RIDGE v. PRATHER.

Scire facias against the terretenant of a judgment-debtor, deceased, to have execution. Plea, that the defendant was a bona fide purchaser from the judgment-debtor, without notice, after the expiration of a year and a day from the time of the judgment, and before the issuing of the scire facias. Held, on demurrer, that the plea was no bar.

A judgment is made a lien, by statute, on the lands of the debtor: which lien is not limited to a year and a day, or to any other period; though an execution cannot issue after a year and a day, unless awarded on scire facias.

Lands purchased by the debtor after the judgment, and aliened before execution to a bona fide purchaser, are bound by the lien.

ERROR to the *Clark* Circuit Court.

*Tuesday, November 22.*

BLACKFORD, J.—*Prather* obtained judgment against *Gilwick* in 1816, and had execution of fieri facias thereon. The sheriff returned the execution executed, by a replevin-bond, the same year. *Gilwick* afterwards died. Upon scire facias issued in 1823, against the heirs and terretenants of *Gilwick*, and *Lilly* the replevin-surety, the sheriff, inter alia, returned *Ridge* terretenant of land that was *Gilwick's* at the time of the judgment. *Ridge* came in and pleaded, that he was a bona fide purchaser from *Gilwick* without notice, after the expiration of a year and a day from the time of the judgment or replevin-bond, and before the issuing of the scire facias. Upon demurrer to this plea, there was judgment for *Prather*, the plaintiff in the Circuit Court.

In opposition to the feudal principles of the common law, and beyond the bounds of the elegit given by the *English* statute of West 2, or that of the state of *Virginia* which ceded this territory to the union, the policy of our country has been, from its earliest history, to subject real estate to absolute sale for the

payment of debts. Hence our execution of fieri facias is against the lands and tenements of the debtor, as well as against his goods and chattels. The old code of the north-western territory of 1795, p. 15, contains the prototype of the act which we see in the revised codes of 1807 and 1817, subjecting real and personal estate to execution, and which is the law of the case now before us. That act of 1795 was adopted by the governor and judges, from the laws of *Pennsylvania*, where it was enacted in 1705. 1 Read's Digest, 226. The decisions of that state therefore, on the subject, merit our particular attention. That under this statute of *Pennsylvania*, judgments, from the time of their rendition, were liens on the lands of the defendant, is evident from the first books of reports there. *Graff* v. *Smith*, 1 Dall. 481. They were considered liens too, not merely for a year and a day, but ad infinitum. In 1798, the legislature passed an act of limitation, by which it was enacted, that no judgment should continue a lien on the real estate of the debtor, during a longer period than five years, unless a scire facias was sued out to revive the same. 1 Read's Digest, 192. In *Young* v. *Taylor*, 2 Binn. 218, this subject is adverted to. *Rawle* and *Binney*, counsel on one side, say in argument, that a judgment lien exists for five years, whether execution issues or not: *Levy* and *Dallas* on the other side say, the mischief before the act of 1798 was, that judgments were a perpetual lien, without any process to continue or revive the same. This was questioned by no one. The case of *Carkhuff* v. *Anderson*, 3 Binn. 4, was as follows:—In 1799, *Hollinback* had judgment against *Craig*; in 1801, *Craig* sold and conveyed his land to *Anderson*; in 1802, *Hollinback* revived his judgment by scire facias, and *Carkhuff* purchased the premises at the sheriff's sale. In ejectment against *Anderson*, it was decided that *Hollinback's* judgment was a lien on the land, and *Carkhuff* recovered. Such is the law of *Pennsylvania*, whence our statute making judgments binding on the lands of the debtor is derived. But we have no statute limiting the duration of the lien.

At common law, land in the general was not liable for debt; nor could any execution issue on a judgment, in a personal action, after a year and a day. 2 Bac. 728. The judgment however was not barred, for an action of debt would still lie on it. The statute of West. 2, 13 Edw. 1, authorized the elegit, and thus made land in *England* liable for debt, from the time of the judg-

ment. 3 Bl. Com. 418. It also gave the scire facias in personal ac-
tions, by which, after a year and a day, the judgment might be
revived, as in real actions at common law. Co. Litt. 290, b.
Since that statute it has been considered, that when a man has
judgment for debt, or is conusee of a statute, and the debtor
before execution aliens by fine, and five years pass, yet the
plaintiff may still have execution. 2 Bac. 731. Even lands
purchased after the judgment, and aliened before execution to
a bona fide purchaser, have been held bound by the lien. 2
Cruise, 73 (1). No decision of the *English* Courts has been cited
by the counsel, to show that this lien of a judgment upon real
estate is suspended, after a year and a day, until the issuing of a
scire facias; nor does this Court recollect any such case in that
country.

In *New-York*, there is the following case. In *February*,
1802, *Ehle* had judgment in debt against *Borst*, whose land was
thereupon sold in *June*, 1802, to *Ellwood*. Afterwards an old
judgment of 1798, in favour of *Kane* against *Borst*, was revived
by scire facias in *December*, 1803, and the same land levied upon
and sold to *Kane*. The claimant under *Ellwood*, who purchased
under the younger judgment, brought ejectment against the
lessee of *Kane*, who purchased under the prior judgment. It
was determined that the plaintiff could not recover. The
language of the Court is as follows:—"If the execution in fa-
vour of *Kane* had been issued within the year and a day, any
lands purchased and possessed by third persons, after the dock-
eting of the judgment, might have been sold. Here the plain-
tiff having lain by, for more than a year and a day after he had
obtained judgment, it became necessary to revive it against the
original defendants, which, when revived, was of the same force
and effect, and of course liable to be proceeded upon in the
same manner, as if the time within which an execution might
legally have been issued, had not been suffered to elapse." The
Court further says, if the defendant could make the defence
which the terretenant might have made to the scire facias, had
he been admitted a party, it would not alter the result. *Jackson,
ex dem. Sternberg,* v. *Shaffer,* 11 Johns. R. 513. This is a strong
case, and directly in point.

It appears to us, that the binding efficacy of a judgment con-
tinues upon land after a year and a day, although the power of
taking out execution on it without a scire facias be suspended (2).

Nov. Term, 1825.

RIDGE
v.
PRATHER.

We have always had a statute, at least as strong as that of West. 2, by virtue of which judgments are liens upon real estate. We have a statute of frauds too, which, like that of Ch. 2, prevents the lien, as regards purchasers, from relating back further than the time of signing. We have no statute however, like that of *Pennsylvania*, which limits the time forward, beyond which the lien shall cease to operate, unless revived by scire facias (3). The conclusion, we think, cannot easily be mistaken.

The defendant in this cause is a terretenant, and has a right to plead in bar any thing which shows his land not liable to the execution. If his plea had stated a bona fide purchase by him from *Gilwick*, the original defendant, prior to the signing of the judgment, it would have been a good bar; but the alienation pleaded, being subsequent to the judgment against his grantor, is no answer in our opinion to the scire facias.

*Per Curiam.*—The judgment is affirmed with costs.

*Nelson*, for the plaintiff.

*Howk*, for the defendant.

(1) This is the common law. 1 Prest. Abst. 191. 3 id. 325, 350.—4 Kent, 429, 430. It is the law in *New-York*. Ibid. But in *Pennsylvania*, after-acquired lands are not bound until the issuing of execution. *Colhoun* v. *Snider*, 6 Binn. 135.

(2) Contra in *Virginia*     *Eppes* v. *Randolph*, 2 Call, 125, 186. In that state there is no statute expressly making a judgment a lien on land. The lien there results from the right to take out an elegit. During the existence of this right, says C. J. *Marshall*, the lien is universally acknowledged. Different opinions seem at different times to have been entertained of the effect of any suspension of the right. *United States* v. *Morrison*, 4 Peters, 136. In *Kentucky*, a judgment does not bind land, until the execution is delivered to the sheriff. In this respect, real and personal property are there on the same footing. *Bank U. S.* v. *Tyler*, ib. 383. For the statute law in the states generally, as to the liability of real property to judgment and execution, vide 4 Kent, 425—431. The statute of this state, there referred to, prohibiting the sale of land on execution for less than one-half its value, is repealed. Here, now, if the rents and profits for seven years will not sell for a sufficient sum to satisfy the execution, the fee-simple is sold to the highest bidder. Stat. 1823, p. 188. By this statute, a judgment is expressly made a lien on land, in the county where rendered, from the day of its rendition; and, in any other county, from the time an attested copy of the record of the judgment is filed and recorded in the clerk's office there. Ib. p. 192. For the statute of frauds referred to in the text, vide Stat. 1823, p. 218. Every clerk is bound to keep a docket (i. e. index) of judgments, to facilitate the search for them. Stat. Dec. 1825, p. 50.

For the *English* law respecting the encumbrance on real estate by judgment, vide 3 Prest. Abst. 311—354. The commencement of the lien is there

spoken of as follows: Judgment by a creditor against an heir was binding on the land by relation to the time at which the action was commenced. With this exception, judgments, statutes-merchant, and of the staple, and recogniz-ances, are binding on the land of the debtor, as against him and his heirs, only from the time at which they are respectively entered of record; and as to judg-ments, the time to which they relate, as the return of the writ, &c. but as against purchasers for a valuable consideration, and in equity without notice, only from the time at which judgments are docketed, and recognizances are enrolled. But, inasmuch as these encumbrances are a lien on the debtor and his heirs, they are in equity a lien on the purchaser, who before the comple-tion of his purchase has notice of these securities. And with respect to lands in register counties, the lien of judgments does not attach at law until regis-tration of the several deeds and encumbrances, in the mode prescribed by the several register acts. But a purchaser is bound by these encumbrances al-though they be not registered, in case he has notice of these encumbrances prior to the completion of his purchase, by taking a conveyance, or payment of his purchase-money. As between judgment-creditors, &c. each will have priority according to the date of the lien. Ib. 345.

(3) Judgments now cease to be liens on real estate, after the lapse of 10 years from the time of their rendition, unless revived by scire facias. Stat. *Dec.* 1825, p. 49.