MARSHALL v. McLEAN.

A particular description in a deed ought not to limit the grant made certain under a general description, unless it can be clearly ascertained from all the words used that it was the intention of the parties to restrict the grant by the particular description.

Where there is ambiguity on the face of the deed, the construction should be most favorable to grantee.

A judgment of partition is matter of public record, and where a recorded deed refers to such judgment and conveys all the land designated under a certain described share in said partition, it amounts to full notice of all the land or lots comprised in such described share, even of such as might be omitted in a particular description given in the deed.

Where land was first sold in satisfaction of a junior judgment, and then subsequently sold to satisfy a senior judgment; held that the sale under the senior judgment should prevail.

APPEAL *from Lee District Court.*

*Opinion by* KINNEY, J. Action of right brought by Marshall to recover possession of lots one and two, in block No. ten, in the city of Keokuk. Plea denying the right to recover judgment for defendant. From the bill of exceptions taken by Marshall it appears that to sustain the action he introduced, first, the record of partition in which lot one was allotted to Charles Thompson, and lot two to John H. Lines. He then offered in evidence a deed from said Lines dated April 23d, 1850, conveying said lot two, to William Stotts, and deed from Stotts of date October 5th, 1850, conveying said lot to plaintiff. This is the source and chain of title to lot two.

To sustain title to lot one, the plaintiff offered in evidence the records of the district court of Lee county, containing a judgment for costs in said partition suit, together with execution against said Thompson, and the return thereon, by which it appeared that said lot one was sold to Hawkins Taylor on the 27th day of May, 1843, and a deed from William Stotts, sheriff of said county, dated

Marshall v. McLean.

June 20, 1843, conveying said lot one to said Taylor, all of which were admitted without objection. Plaintiff then offered in evidence the record of a judgment in said court, dated April 23d, 1846, in favor of George Donnel vs. said Taylor, and execution and return thereon, which showed that said lot one was sold to William Stotts on the 2nd day of September, 1848, for which a deed was made by Peter Miller, sheriff, to said Stotts, dated December 4, 1848, conveying said lot one to said Stotts. Stotts sold to plaintiff by deed of date October 5, 1852. Upon the introduction of this evidence plaintiff rested his case.

Defendant then offered in evidence a deed from said John II. Lines dated November 1, 1844, conveying certain lands to Hugh T. Reid which after reciting the consideration, &c., reads as follows: The said parties of the first part "do by these presents convey, remise, release, and forever quit claim unto the said party of the second part all the right, title and interest which was acquired by the parties of the first part or either of them in and to the lands set apart and allotted to the said John II. Lines in the half breed Sac and Fox Reservation in said county by a decree of the district court of said county making partition of said lands and being designated in said decree of partition as share number thirty-seven, and all the title which the said parties or either of them have in and to said lands by virtue of any tax title or tax sale, as well as all the right, title and interest acquired by the said parties of the first part or either of them, by virtue of any conveyances of the half breed Indian or half breed Indians, by, through, or under whom the said John II. Lines claims in said decree of partition to derive his title to an interest in said half breed lands. The said lands allotted to said John II. Lines in said decree being more particularly described as follows, to-wit:" Here follows a description of a number of pieces of land and a large number of lots in the city of Keokuk in which lot No. two in block No. ten is omitted.

The defendant also introduced a deed from said Reid, dated July 3, 1848, conveying to him said lot two. The plaintiff objected to the introduction of the deed from said Lines to said Reid on the ground that said deed did not convey any portion of the land in controversy, but this objection was overruled by the court, and the deed admitted in evidence.

The defendant also offered in evidence a deed from Hawkins Taylor to L. R. Reeves dated September 17, 1847, conveying said lot one to said Reeves, also a general warrantee deed from said Reeves to Jesse Seely and Jehue Stewart dated September 1, 1847, conveying said lot one, and warrantee deed from Seely and Stewart of April 22, 1848, conveying said lot to defendant.

The defendant then offered in evidence the record of a judgment in the district court of Lee county rendered on the 7th day of May, 1844, in favor of Hood & Abbott vs. Hawkins Taylor, also the records of said court dated April, 1850, reviving said judgment, and also an execution issued October 16, 1850, on said judgment, and the return thereon, which showed that said lot one was sold by virtue of said execution to defendant. A sheriff's deed was duly executed of date 7th December, 1850, conveying said lot one to said defendant. Upon this the defendant rested. Whereupon the court decided that the evidence established the title to said lots in the defendant and gave judgment accordingly.

Marshall appeals, and assigns for error,

1st. That the court erred in admitting the deed from John H. Lines and wife to Hugh T. Reid in evidence.

2d. The court erred in deciding that the evidence established title to the lots in controversy in defendant and in rendering judgment accordingly.

The record presents two questions for adjudication.

*First.* Did the title to lot two pass with the other property by virtue of the conveyance from Lines to Reid.

*Second.* As both plaintiff and defendent respectively claim under Hawkins Taylor as the source of title, the plaintiff by virtue of judgment against Taylor obtained in 1846, and sheriff's deed in 1848—and the defendant by virtue of a judgment in favor of Hood & Abbott recovered in 1844, a revival of said judgment, execution, sheriff's sale and deed in 1850—did the title pass to plaintiff by virtue of a senior execution, levy, sale, and deed, upon a junior judgment.

These questions we will briefly consider in their order.

Lines and wife in the general description convey, remise, release, and forever quit claim, to Reid all the right, title, and interest which was acquired by them or either of them in and to the lands set apart and allotted to the said Lines in the half breed Sac and Fox Reservation in Lee county by a decree of the district court of said county making partition of said lands, and designated in said decree as share thirty-seven.

This description is perfect within itself, and sufficient to pass the title without particular reference to the land and lots specially set forth in share thirty-seven. If the description had ended here, there would have been no doubt but that all of share thirty-seven would pass by the conveyance. We have, then, only to enquire into the evident intention of the parties in making the description more definite and certain. Was it to restrict the grant made clear and unambiguous in the general description, or merely to refer more particularly to the land and lots designated in share thirty-seven? Evidently the latter, because the parties expressly say "the said lands allotted to said John H. Lines in said decree being more particularly described as follows, to-wit." In this description lot two is omitted; not from the conveyance, but as not being contained in share thirty-seven. What does this establish? That the parties intended to exclude it from the conveyance? Not at all ; but merely that in giving a description of the property set forth in

Marshall v. McLean.

share thirty-seven, they inadvertently omitted lot two in block ten. In *Bott* v. *Burnell*, 11 Mass. 163, it is laid down as a general rule "that a construction shall always be made of words, if it can be, to support that which seems to be the intent of the parties; and that general words are not restrained by restrictive added *ex-majori cautela*, or by affirmative words more restrictive, but which have no tendency to render a general description ambiguous or uncertain." And in *Jackson* v. *Clark*, 7 John. 216, in construing a deed, Judge Spencer well said "that the rules which govern the construction of grants have been settled with the greatest wisdom and accuracy, and that the following principles should govern. Such construction is to be given as will give effect to the intention of the parties, if the words they employ will admit of it, *let res magis valeat quam pereat.* If there are certain particulars once sufficiently ascertained, which designate the thing intended to be granted, the addition of a circumstance, false or mistaken, will not frustrate the grant."

Applying these sound and well digested principles to the case before us, we have no difficulty in giving a construction to this grant, so as to pass the title to the lot in controversy to Reid. A particular description should never control a general one, unless the object is to render that which is general and uncertain more specific, definite and certain. Such particular description ought never to limit the grant made certain by a general description, unless it can be clearly ascertained, from all the words of the grant, that it was the intention of the parties to restrict the grant by the particular description. Again, when there is ambiguity on the face of a deed, it is well settled that such construction must be given as will be most favorable to the grantee.

In this case we are not driven to this last rule of construction, as the intention of the parties is apparent on the conveyance—free, as we think, from all uncertainty. The

general description relative to the conveyance is not restricted by particular words, nor do the grantors limit the grant by omitting lot two in the recital of lands contained in share thirty-seven. All of that share, as we have said, was conveyed by the general words, and the omission is not inconsistent with the grant, nor does it render it less certain, and hence should not frustrate the conveyance.

But it is said Marshall had a right to purchase lot two upon the faith of the particular description in the deed, and that this alone was notice of the property actually conveyed. In reply to this we say, first, that he was bound to look to the whole instrument, that he was presumed to know the law, and the legal effect of the general words of conveyance; and second, that the decree in partition was of public record, and the law will hold him to notice, as share thirty-seven was conveyed, and lot two included in that share. In either point of view he purchased with full notice that Lines had no interest in lot two, and in this particular occupies the same position that Lines would occupy were he contesting the title of Reid to said lot. The deed from Lines to Reid was properly admitted as evidence, and the decision establishing the title to lot two in the defendant, Reid's grantee, is correct.

In relation to lot one, it will be seen that Taylor obtained a sheriff's deed June 20, 1843. May 7, 1844, Hood and Abbott obtained judgment against Taylor; April 23, 1846, Donnel obtained judgment against Taylor; September, 2, 1848, the lot was sold on the Donnel judgment to Stotts, deed made to him December 4, 1848, and conveyance to plaintiff October 5, 1852. In April, 1850, Hood & Abbott revived their judgment; October 16, 1850, execution issued, said lot sold to defendant, and deed made December 7, 1850. It is now contended by the plaintiff that the sale on the Donnel judgment will hold the lot; that although the judgment is junior to the Hood & Abbott judgment, yet as they were not diligent in asserting their

rights, they lost their lien. The statute in force at the time Hood & Abbott obtained their judgment, made all judgments liens upon the real estate of the defendant, from the day of the rendition thereof. R. S. p. 271, § 6. This statute does not limit the time during which such lien shall continue. The legislature, by act approved January 19, 1846, limited the liens of judgments to ten years. This act is made applicable to judgments which were then rendered, evidently so from the plain and obvious import of the language, as well as from the fact that prior to its becoming a law, the lien was unlimited, and hence mischievous in its consequences and required a remedy—*vide* similar decision in *Woods* v. *Mains*, 1 G. Greene, 275. Under this statute Wood & Abbott had a right, any time within ten years from the date of the judgment, to assert their lien. The judgment lost none of its efficacy by lying dormant. It was still a lien upon the property of the defendant, and all junior incumbrances must be postponed until it is satisfied, if enforced within the time limited by statute. The judgment was revived, but this did not revive the lien, because the lien was not extinct. It only gave a remedy to enforce by execution, a lien which was never lost. At common law, land in general was not liable for debt, nor could any execution issue on a judgment, in a personal action, after a year and a day. 2 Bac. 728. The judgment, however, was not barred, for an action of debt would lie on it. The statute of West. 2, 13 Edw. 1, authorized the *elegit*, and thus made land in England liable for debt from the time of the judgment. 3 Bl. Com. 418. It also gave the *scire facias* in personal actions, by which, after a year and a day, the judgment might be revived, as in real actions at common law. Co. Litt. 290. This being the law in New York in 1802, we find the following case in point: In February, 1802, Ehl had judgment in debt against Borst, whose land was, thereupon, sold in June, 1802, to Ellwood. Afterwards an old judgment of 1798, in favor of *Kane* v. *Borst*,

24

Marshall *v.* McLean.

was revived by *scire facias* in December, 1803, and the same land levied upon and sold to Kane. The claimant nuder Ellwood, who purchased under the younger judgment, brought ejectment against the lessee of Kane, who purchased under the prior judgment. It was determined that the plaintiff could not recover. The language of the court is as follows: "If the execution, in favor of Kane, had been issued within the year and a day, any lands purchased and possessed by third persons, after the docketing the judgment, might have been sold. Here the plaintiff having lain by for more than a year and a day after he had obtained judgment, it became necessary to revive it against the original defendants, which, when revived, was of the same force and effect, and of course liable to be proceeded upon in the same manner as if the time, within which an execution might legally have been issued, had not been suffered to elapse." *Jackson* v. *Shaffer*, 11 John. 513; *Ridge* v. *Prather*, 1 Blackf. 401, where the question is ably considered. We think that the lien acquired by the Hood & Abbott judgment remained, and was in force, at the time of the sale on the Donnel judgment. That the purchaser under the Donnel judgment took nothing by the sale, prejudicial to the rights which accrued by virtue of the senior judgment; that at most, he could only follow the surplus fund after the senior judgment became satisfied by sale of the lot.

The court was right in deciding that the title to said lot one, was in the defendant, who held the same by virtue of a sheriff's sale, on the Hood & Abbott judgment.

Judgment affirmed.

*J. C. Hall* and *C. H. Phelps*, for appellant.

*Reeves & Miller*, *Rankin & Love*, for appellee.