## MORSELL ET AL. v. FIRST NATIONAL BANK.

A judgment at law is not a lien upon real estate in the District of Columbia, which, before the judgment was rendered, had been conveyed to trustees with a power of sale to secure the payment of the debts of the grantor described in the deed of trust.

Appeal from the Supreme Court of the District of Columbia.

The facts are stated in the opinion of the court.

Mr. J. J. Johnson and Mr. R. K. Elliot for the appellants.

Mr. Enoch Totten, contra.

MR. JUSTICE SWAYNE delivered the opinion of the court.

The question presented for our determination in this case is, whether a judgment at law is a lien upon real estate in the city of Washington, which, before the judgment was rendered, had been conveyed to trustees with a power of sale to secure the payment of the debts of the grantor described in the deed of trust.

The facts, so far as it is necessary to state them, are few and simple : —

On the 4th of November, 1867, the appellant, Morsell, executed a deed of trust to Flodoardo Howard to secure the payment of certain promissory notes held by the *cestuis que trust*, as set forth in the deed.

On the 21st of October, 1869, Morsell executed a like deed to Frederick W. Jones and William R. Woodward to secure the payment to the Co-operative Building and Deposit Association of the sum of $3,050 and future advances.

On the 24th of January, 1871, the appellee, the First National Bank of Washington, recovered a judgment against Morsell for $800, with interest from the 17th of May, 1869, and costs. Execution was issued upon this judgment, and returned *nulla bona*.

On the 10th of February, 1871, Means, Skinner, & Co. recovered a judgment against Morsell for $267.68, with interest as specified, and costs. Execution was returned *nulla bona* also upon this judgment.

On the 1st of March, 1871, Morsell executed to Frederick W. Jones and Joseph R. Edson another deed to secure the payment to the association above mentioned of the sum of $1,060 and future advances.

All these deeds were of the same premises; to wit, lot No. 44, in reservation No. 10, in the city of Washington.

Advances were made to Morsell by the association named from time to time, after the execution of the deed of trust of the 21st of October, 1869, to the amount, in the aggregate, of $2,950. The latest advance was one of $500, made on the 11th of January, 1871. The entire amount claimed to be secured by this deed was, therefore, $6,000.

The amount secured to the association by the deed of the

1st of March, 1871, was $1,500. The latest advance under this deed was made on the 27th of April, 1871. There is no controversy as to these particulars.

On the 22d of September, 1871, the bank, in behalf of itself and such other judgment creditors of Morsell as might choose to come in and be made parties, filed this bill. It was subsequently amended in the prayer. It brought the proper parties before the court, and prayed that the premises described in the deeds might be ordered to be sold, the proceeds be brought into court, and the fund distributed according to the rights of the parties.

Means, Skinner, & Co., by a petition, came in under this bill. The premises were sold pursuant to a decree, and yielded, after deducting costs and charges, the sum of $8,235.22 for distribution. The fund was held subject to the further order of the court. No question was made as to the preference claimed for the amount due to the *cestuis que trust* under the deed to Howard. But the balance left after discharging that liability was insufficient to pay the amount due to the association, laying the judgments out of view. Hence a controversy arose between the association and the judgment creditors, each party claiming priority of payment out of the fund. The auditor of the court, to whom the case was referred, reported in favor of the association. The other parties excepted. The court in general term held that the association was entitled to priority to the extent of $6,000, the amount secured by the deed of trust of the 21st of October, 1869; and that the judgments were to be next in the order of payment, both being prior in date to the last deed of trust. This left nothing applicable to the debt secured by the latter. The association thereupon removed the case by appeal to this court.

The "Act concerning the District of Columbia," of the 27th of February, 1801, 2 Stat. 103, declared, "That the laws of the State of Maryland, as they now exist, shall be and continue in force in that part of said District which was ceded by that State to the United States and by them accepted as aforesaid."

A part of the laws so adopted was the common law. *Van Ness* v. *Hyatt*, 13 Pet. 298. It was well settled in the English

jurisprudence, that, according to the common law, no equitable interest in property of any kind was liable to execution. *Scott* v. *Schooley*, 8 East, 467; *Metcalf* v. *Schooley*, 5 Bos. & Pul. 461; *Lyster* v. *Dolland*, 1 Ves. Jr. 431.

Judgments by the common law were not liens upon real estate. The lien arose from the power to issue a writ of *elegit.* That power was given by the statute of Westminster. C. 18, 13 Ed. I. The right to extend the land fixed the lien upon it. *Massingal* v. *Downs*, 7 How. 765; *Shrew* v. *Jones*, 2 McLean, 80; *United States* v. *Morrison*, 4 Pet. 136; *United States* v. *Wooster*, 2 Brock. 252; *Ridge* v. *Prather*, 1 Blackf. 401.

If the judgment debtor died after the *elegit* was executed upon his lands, and before the judgment was satisfied, a court of equity, upon being applied to, would decree a sale of the land upon which it had been executed, and payment of the judgment out of the proceeds. *Stillman* v. *Ashdown*, 1 Atk. 607; *Tyndal* v. *Warre*, 3 Jac. 212. The same principle was adopted by Lord Redesdale into the equity jurisprudence of Ireland. *O'Gorman* v. *Comyn*, 2 Sch. & Lef. 130; *O'Fallon* v. *Dillon*, id. 18.

The reason why lands were not liable to be taken in execution at common law is thus stated by Bacon (2 Bac. Ab. Execution, A): "The lands were not liable because they were obliged to answer the duties of the feudal lord, and a new tenant could not be forced upon him without his consent in the alienation; and the person was not liable because he was obliged by the tenure to serve the king in the wars, and at home the several lords, according to the distinct nature of the tenure."

The premises in question are situated in that part of the District of Columbia ceded by Maryland to the United States. Our attention has been called to no statute passed by Maryland before the cession, or by Congress since, which affects the question before us. We assume that there is none. That question has been definitively settled by this court. In *Van Ness* v. *Hyatt, supra,* it was held, after a very elaborate examination of the subject, that, according to the laws of Maryland at the time of the cession, the equity of redemption of a mortgagor could not be sold under execution upon a judgment against him.

In *The Bank of the Metropolis* v. *Guttschick*, 14 Pet. 19, where the controversy involved a deed of trust of a lot in the city of Washington, it was said, " The only right of the grantor in the deed is the right to whatever surplus may remain, after the sale, of the money for which the property sold." It is clear that there could be no lien of a judgment upon such a *chose in action*, as well as that it could not be sold upon execution. The case of *Smith's Lessee* v. *McCann*, 24 How. 398, is an instructive one upon the subject we are considering. It was a case from Maryland; and the opinion of the court was delivered by Chief Justice Taney, who was, of course, well versed in Maryland law. There a sale had been made under a judgment and execution against a party to whom the premises had been conveyed in trust for the benefit of his wife and children. The action was ejectment by the purchaser. It was held that the statute of 5 Geo. II. which was in force in Maryland at the time of the cession, and which made " houses, land, negroes, and other hereditaments and real estate," liable to execution " in like manner as personal estate," &c., " did not interfere with the established distinction between law and equity, and that an equitable interest could not be seized under a *fi. fa.* until the law of Maryland was in this respect altered by the act of the assembly of the State in 1810."

This act expressly authorized the sale of equitable interests in real estate under execution. This enactment carried with it an implication, equivalent, under the circumstances, to an express declaration, that it could not be done before. Such, in the case last referred to, is stated to have been the law of Mayland up to that time. No such act has been passed by Congress. The law in the Maryland part of the ceded territory has remained as it was at the time of the cession. Other authorities to the same effect with those we have considered might be cited from the adjudications of Maryland and other States; but it is unnecessary to pursue the subject further.

The judgments in no wise affected the trust premises until the bill was filed. That created a lien in favor of the judgment creditors. There was none before. This was posterior to the execution of both the deeds of trust in favor of the association, and to all the advances made under them.

The court below was clearly in error in sustaining the exception to the auditor's report, and in giving priority of payment to the judgments over the amount secured by the last deed of trust.

> *The decree is, therefore, reversed; and the cause will be remanded with directions to overrule the exception to the auditor's report, and to enter a decree in conformity with this opinion.*