McMILLAN, Executrix, et al., Appellants, *v.* DAVENPORT, Respondent.

(No. 3,011.)

(Submitted September 22, 1911. Decided October 21, 1911.)

[118 Pac. 756.]

*Judgment Liens—Secret Interests—Not Subject to Lien—Quieting Title—Mortgages—Tender—Possession—Erroneous Judgment.*

Judgment Lien—Docketing Judgment.
    1. Under section 6807, Revised Codes, a judgment becomes a lien upon the real property of the judgment debtor only when it is docketed.

Same—Secret Interests—Not Subject to Lien.
    2. *Held,* that the provision of section 6821, Revised Code, that any interest in real property is subject to levy and sale under execution, does not render an interest, undisclosed by the record, subject to the lien of a docketed judgment.

Quieting Title—Discharge of Mortgage Debt—Tenders—Prerequisite.
    3. Plaintiffs, claiming under a sheriff's deed, were properly denied relief in their action to quiet title to real property, for failure to offer to discharge a mortgage debt due defendant.

Same—Mortgages—Awarding Possession—Erroneous Judgment.
    4. Defendant in an action to quiet title, who held under grant from one to whom an absolute deed had been given to secure a loan, had merely such rights in the premises as his grantor had—those of a mortgagee, and was therefore not entitled to possession.

*Appeal from District Court, Silver Bow County; Jeremiah J. Lynch, Judge.*

ACTION by Elma P. McMillan, executrix of A. A. McMillan, deceased, and another, against Lee Davenport. From a judgment for defendant, and an order denying a new trial, plaintiffs appeal. Judgment modified and order affirmed.

In behalf of Appellants, *Mr. E. B. Howell* submitted a brief, and argued the cause orally.

This is a statutory action to quiet title. The plaintiffs set forth fully in the complaint the facts upon which their title to the premises in controversy is based, and allege that defendants make some claim to the said property adverse to them. They pray that defendants be required to set forth fully any claim that they make to said property, that such claim be adjudged without right as against the plaintiffs, and that plaintiffs have judgment for "such other and further relief as to the court seems just in the premises." Under such a complaint, the court was authorized to grant any proper relief within the limitations of section 6713 of the Revised Codes. (*De Leonis* v. *Hammel,* 1 Cal. App. 390, 82 Pac. 349; *Merk* v. *Bowery Min. Co.,* 31 Mont. 309, 78 Pac. 519.) Whether the title pleaded by plaintiffs is legal or equitable is not important to consider, since the statute (sec. 6870, Rev. Codes) permits the action to be brought on either kind of title. (*Montana Ore Pur. Co.* v. *Boston & Mont. etc. Co.,* 27 Mont. 288, 70 Pac. 1114, 22 Morr. Min. Rep. 471.) The plaintiffs were not required to set forth the nature of defendants' claim. That duty devolved on the defendants. (*Woody* v. *Hinds,* 30 Mont. 189, 76 Pac. 1.)

Since the relief asked for could have been properly given in this action, it is unimportant to consider whether some more appropriate form of action might have been adopted. The

plaintiffs framed it as an action to quiet title under the statute above cited. The defendant Davenport used it as a vehicle to secure a judgment of ejectment against the plaintiffs. If the district court considered that it could not grant plaintiffs relief in this form of action, then its judgment should have been in abatement of the action and not in bar of plaintiff's rights. It was not within the province of the court to say to plaintiffs, "I cannot adjudge you to be the owners of the land in controversy in this form of action; therefore I give the land to the defendant."

Davenport in his answer makes no claim to have been an innocent purchaser of the premises in controversy. The law is well settled that where it is sought by a bill in equity to enforce an equitable title to land against a subsequent purchaser, the defendant must explicitly deny that he had notice of the prior equity before his purchase was complete. (*Grier* v. *Canada,* 119 Tenn. 17, 107 S. W. 970; *Eversdon* v. *Mayhew,* 65 Cal. 163, 3 Pac. 641; *County Bank* v. *Fox,* 119 Cal. 63, 51 Pac. 11.) "There must not only be a distinct denial of notice before the purchase, but a denial of notice before payment. Even if the purchase money has been secured to be paid. yet if it be not, in fact, paid before notice, the plea of purchase for a valuable consideration will be overruled." (*Smith* v. *Orton,* 131 U. S. (Append.) lxxv, 18 L. Ed. 62.) The defendant having failed to allege as one of the elements of his title that he had purchased in good faith and without notice of plaintiff's rights, it must be assumed by the court for the purposes of this decision that he had notice. This is no inadvertent omission from the answer. The allegation was omitted because it cannot be truthfully alleged.

Mr. *L. P. Forestell,* and Mr. *I. A. Cohen,* submitted a brief in behalf of Respondent; Mr. *Forestell* argued the cause orally.

It was within the power of the court, and, in fact, it was its duty, under the pleadings in this case, to award possession to the defendant. The statute under which this action was brought

and the complaint in the action required the defendant to set up any estate or interest in the property adverse to the plaintiffs for the purpose of determining such adverse claim. The purpose of the action was to settle the title to the premises as between the parties to the action and to quiet the title in favor of the party having the superior title. Possession was one of the issues in the case. "And every estate or interest, known to law, in real property, whether legal or equitable, may be determined in this character of action." (*Coleman* v. *Jaggers,* 12 Idaho, 125, 118 Am. St. Rep. 207, 85 Pac. 894, and cases cited.) Neither is the question of possession important under the statute. One having the legal title to land may maintain an action to quiet title whether he is in or out of possession. (*Montana Ore Pur. Co.* v. *B. & M. Co.,* 27 Mont. 288, 70 Pac. 1114, 22 Morr. Min. Rep. 471.) Persons in possession and persons out of possession may be made defendants and their rights adjudicated in this character of suit. (Sec. 6489, Rev. Codes.) "A defendant may set forth, in his answer, as many defenses or counterclaims, or both, as he has, whether they are such as were formerly denominated legal or equitable." (Sec. 6549.)

The position of appellants is that although they rely upon a title burdened with what they call a mortgage for $500, they can come into a court of equity and without showing payment, tender or offer to pay, be decreed the owners of the property free from any encumbrance, simply because the defendant did not frame his answer upon that theory, and failed to claim the money. And in support of this, they cite the answer in the case of *Larson* v. *Peppard,* 38 Mont. 128, as an example of what defendant should have done to entitle him to the money. But, upon reading that case, it will be seen that it has no application at all, except in so far as it announces the equitable rule that he who seeks equity must do equity. The case does not decide, neither does any other case that we have ever seen, that one relying upon an equitable title to land, can obtain a reconveyance from one to whom it was conveyed as security for a loan, without paying, tendering or offering to pay the loan. We

are aware of no rule of law or equity or authority which entitles one to come into a court of equity confessedly with unclean hands, admittedly without himself having done equity, and to obtain equitable relief under such circumstances. The proposition contended for by the appellants that a plaintiff in a court of equity will get more than he is entitled to and a defendant less because the defendant in his answer did not make the claim, is certainly a novel one, and one, we apprehend, that few lawyers will be found willing to defend. "A plaintiff cannot come into a court of equity and ask for a decree debarring the defendant from asserting a claim under an instrument executed by the former without restoring the consideration received by him." (*Chandler* v. *Chandler,* 55 Cal. 267.) "A party seeking to quiet his title to realty will, as a condition precedent to the relief, be compelled to do equity." (32 Cyc. 1379, and cases cited; see note to *Lantz* v. *Fishburn,* 3 Cal. App. 662, 91 Pac. 816, and cases cited; *Montana O. P. Co.* v. *Boston & Mont. C. C. & S. Min. Co.,* 27 Mont. 288, 70 Pac. 1114, 22 Morr. Min. Rep. 471.) "The defendant in this case became an actor, and the burden of proof was upon him to establish the title which he pleaded, and the court having found his title superior to plaintiffs', from which the right of possession flowed, properly awarded him the possession." (*Kitts* v. *Austin,* 83 Cal. 167, 23 Pac. 290; sec. 6489, Rev. Codes.)

## Statement of the Case by the Justice Delivering the Opinion.

In this action the plaintiffs, alleging that they are the owners, in possession, and entitled to possession of certain land consisting of 2.45 acres, situate in Silver Bow county and described in the complaint, seek to have determined an adverse claim made thereto by the defendants. The defendant Bordeaux defaulted, and thereafter the cause proceeded against defendant Davenport alone. The trial was by the court without the aid of a jury, and resulted in findings and a judgment for the

defendant.   Plaintiffs have appealed from the judgment and an order denying them a new trial.

In their complaint plaintiffs base their claim of title upon a sheriff's deed dated March 4, 1898.   It is alleged that this deed was obtained through a sale of the land, it being the property of one Edward King made on February 1, 1897, under execution upon a judgment in favor of plaintiffs and against Edward King, recovered in the district court of Silver Bow county on October 10, 1891.   It is further alleged that plaintiffs went into possession soon after the sale in 1897, and so continued in possession until the bringing of this action.   The defendant, after putting in issue the material allegations in the complaint, discloses his claim as based upon a homestead patent issued to one Robert Lacey, on January 9, 1896, a deed of bargain and sale from Lacey and his wife, through their attorney in fact, John R. King, to John R. Bordeaux, dated April 8, 1896, and a deed of bargain and sale from Bordeaux to himself, dated May 12, 1902.   In their replication the plaintiffs assail the title of defendant thus disclosed by alleging the following: That prior to the issuance of the patent to Lacey, but subsequent to the entry of the land and on December 17, 1894, Lacey and wife by deed put upon record April 18, 1896, conveyed the land to John R. King; that John R. King took the title and thereafter held it in trust to the use and benefit of Edward King, a brother; that on April 8, 1896, Edward King obtained a loan of $500 from Bordeaux, and procured John R. King to convey the land to Bordeaux as security for the same, and for no other purpose; that this conveyance was by deed to Bordeaux by John R. King and his wife, and also a deed to Bordeaux by Lacey and wife, who purported to act through their attorney in fact, John R. King; that Lacey and his wife had no interest in the land, and that the title stood in the name of John R. King, but was held by him in trust for Edward King, and not otherwise; that by these deeds Bordeaux became the trustee of the title for Edward King; that, when Bordeaux became vested with title, plaintiffs' judgment against King, set out in the complaint, had been duly

entered and docketed in the records of the district court of Silver Bow county, and that Bordeaux took the title with notice that the lien of the judgment was superior to the interest acquired by him under his conveyance; that, having enforced their judgment by execution and obtained their deed, they are the absolute owners of the property as against the claims of defendant who took it subject to their rights. The defendant introduced no evidence, but submitted the cause for judgment upon that introduced by the plaintiffs.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

The chief contention made by counsel for plaintiffs is that the findings do not support the judgment. The evidence is voluminous. Most of it is not relevant to the issues presented by the pleadings. Indeed, the facts necessary to a decision of the fundamental question involved are not controverted. We shall therefore state briefly what these facts are, and proceed to a solution of the legal question which arises upon them.

The patent to the land in controversy was issued to Robert Lacey on March 9, 1896. He and his wife had theretofore conveyed to John R. King by quitclaim deed dated December 17, 1894. Such title as John R. King had vested under this deed. Bordeaux was vested with title by a quitclaim deed from John R. King and his wife, and a deed of bargain and sale from Lacey and wife, through John R. King, their attorney in fact, both dated April 8, 1896. All these instruments were recorded on April 18, 1896. The evidence is not clear as to what the fact was, but it lends support to the conclusion that the entry upon which the patent issued was made by Edward King, in the name of Lacey, through the use of "Additional Soldiers' Homestead" scrip; John R. King, though apparently acting for Lacey, being in fact the agent of Edward King. This course was probably pursued in order to protect the property from the claim of Edward King's creditors; but whether this was so it is not now necessary to inquire. The conveyances to Bordeaux, though absolute in

form, were intended to operate as a mortgage to secure the loan made by him to Edward King. The good faith of this transaction, so far as Bordeaux is concerned, is not impugned, nor is that of defendant Davenport in accepting his conveyance from Bordeaux, for no issue of fraud is presented by the pleadings. Plaintiffs' judgment was properly docketed at the time the Bordeaux conveyances were made, and, when he conveyed to Davenport, the sheriff's deed was on record.

The rights of the parties are therefore to be determined by the answer to the inquiry: Was the plaintiffs' judgment a lien upon the secret interest of Edward King? If so, the plaintiffs' title secured through the sheriff's deed was superior to the Bordeaux right, and hence is superior to the defendant's right, without regard to the character of the title vested under the conveyances to Bordeaux or to the defendant. Otherwise the defendant's right is superior, whether he took with notice that Bordeaux was only a mortgagee or not. Even though he did, his claim may not be set aside because he cannot be devested of title until the mortgage debt has been discharged; and it is not suggested, either in the pleadings or in the evidence, that it has been. Nor has the case any of the aspects of an action to redeem.

The Lacey title was vested in John R. King as trustee for the use and benefit of Edward King. Under section 6821 of the Revised Codes, Edward King's interest was subject to be taken on execution by his creditors. Section 6807 requires the clerk to docket a judgment as soon as he makes up the judgment-roll. It then declares: "And from the time the judgment is docketed it becomes a lien upon all real property of the judgment debtor not exempt from execution in the county, owned by him at the time, or which he may afterward acquire, until the lien ceases."

At common law a judgment was not a lien upon the real estate of the debtor, except for debts due the king. From considerations of public policy, growing out of the feudal system, the law did not permit the feudatory to be deprived of his land lest he should thereby be disabled from performing the military

service due his lord by virtue of his holding. Land could only be taken under the process of *elegit,* which was authorized by the statute of Westminster II (3 Edw. I, c. 18). The lien was a mere incident to the right in the judgment creditor to have the writ. Even só, it only gave the right to seize and hold a moiety of the debtor's lands until the debt should be levied by a reasonable price and extent. (*Hutcheson* v. *Grubbs,* 80 Va. 251; *Morsell* v. *First Nat. Bank,* 91 U. S. 357, 23 L. Ed. 436; 1 Black on Judgments, sec. 433.) It is thus seen that even at common law, as the author last cited points out, the lien was of statutory origin, and was dependent entirely upon the right in the creditor to have his *elegit.* (*Massingill* v. *Downs,* 7 How. 760, 12 L. Ed. 903; *United States* v. *Morrison,* 4 Pet. 124, 7 L. Ed. 804; Freeman on Judgments, sec. 339; 3 Bacon's Abridgment, title "Execution," p. 663.) It was therefore a qualified and restricted lien, and did not authorize a sale of the land, but could be enforced only by taking possession and holding until the debt was discharged by the rents and profits. Therefore, it must be true that in those states which did not adopt the English statute, *supra,* in the absence of express legislative enactment, judgments do not attach as liens to real property in the modern sense of that term. "Since liens arising from judgments are exclusively the creatures of statute, we should naturally expect to find them largely under the control of the legislature, except in so far as the necessity of preserving vested rights and contractual obligations should forbid such interference." (1 Black on Judgments, sec. 399.) How the lien is made to attach, to what extent and to what interest it attaches, are, within the restriction stated, matters to be determined by the terms of the statute granting it.

Under the section of the statute cited, *supra* (Rev. Codes, sec. 6821), any interest in real property is subject to levy and sale under execution. Does this render an interest undisclosed by the record subject to the lien of the docketed judgment? Under section 6807 the requirement is that the judgment be docketed. The evident purpose of this requirement is to protect a pur-

chaser of real estate from the judgment debtor, by giving notice that it is encumbered by a lien so that the purchaser may guard against taking a defective title; in other words, though the [1] judgment exists, it does not bind the property in the absence of that record of it which the statute requires. (*Sklower* v. *Abbott,* 19 Mont. 228, 47 Pac. 901; *Wyman* v. *Jensen,* 26 Mont. 227, 67 Pac. 114.) By the same rule it cannot, in the [2] nature of things, be notice to a grantee of an interest undisclosed by the record who has innocently acquired it. Otherwise one who acquires real estate must at his peril ascertain whether there is not at the time, or was not during the time his proposed grantor held title, or when he acquired it, some judgment debtor owning a secret interest. We cannot think that the legislature in seeking to protect the people in their dealings with each other, set a trap which one desiring innocently to become a purchaser or an encumbrancer of land cannot avoid unless he is able to ascertain the secret or undisclosed interests of all persons whomsoever owned at any time subsequent to the docketing of the judgment. The supreme court of Oregon well said of a similar statute: "The statute intended to make a judgment a lien on the legal title of real property, and not on some hidden equitable title, which could only be brought to light and made available by the extraordinary powers and proceedings of a court of equity." (*Smith* v. *Ingles,* 2 Or. 43.) In that case the judgment debtor, Ingles, had purchased the land sought to be charged with the lien, and had the title conveyed to his sons. He then executed a mortgage to the defendant representing himself to be the agent of his sons. The court, in the language quoted above, refused to hold that a judgment at law in favor of plaintiff against Ingles, existing at the time the mortgage was executed, was a lien. The same principle was recognized and applied in the cases of *Roads* v. *Symmes,* 1 Ohio, 281, 13 Am. Dec. 621, *Morsell* v. *First Nat. Bank, supra,* and *In re Estes* (D. C.), 3 Fed. 134. In this latter case, Judge Deady, speaking of the Oregon statute, said: "In my own opinion the lien of a judgment which is limited by law to the property of

or belonging to the judgment debtor at the time of the docketing, does not nor cannot, without doing violence to this language, be held to extend to property previously conveyed by the debtor to another by deed valid and binding between the parties. A conveyance in fraud of creditors, although declared by the statute to be void as to them, is nevertheless valid as between the parties and their representatives, and passes all the estate of the grantor to the grantee; and a *bona fide* purchaser from such grantee takes such estate, even against the creditors of the fraudulent grantor, purged of the anterior fraud that affected the title. Such a conveyance is not, as has been sometimes supposed, 'utterly void,' but it is only so in a qualified sense. Practically it is only voidable, and that at the instance of creditors proceeding in the mode prescribed by law, and even then not as against a *bona fide* purchaser. The operation of a lien of a judgment, being limited by the statute to the property then belonging to the judgment debtor, is not a mode prescribed by which a creditor may attack a conveyance fraudulent as to himself, or assert any right as such against the grantor therein. This lien is constructive in its character, and is not the result of a levy or any other act directed against the specific property. It is the creature of the statute, and cannot have effect beyond it."

While every character of interest is made subject to execution, we think the purpose of the legislature in enacting section 6821, *supra,* was to furnish an expeditious method of satisfying a judgment, and not to extend the operation of the lien. In other words, the purpose was to put upon the same footing, so far as the levy of execution is concerned, personal property and interests in real estate which are not affected by the lien of the judgment. Under the common law such interests were not subject to execution at all, but had to be reached through the aid of a court of equity. (*Forrest & Lyon* v. *Camp,* 16 Ala. 642; *Terrell* v. *Prestel,* 68 Ind. 86; *Roach's Exrs.* v. *Bennett,* 24 Miss. 98; *Schmidt* v. *Boyle,* 54 Neb. 387, 74 N. W. 964; *Sipley* v. *Wass,* 49 N. J. Eq. 463, 24 Atl. 233; *Loring* v. *Melendy,* 11 Ohio, 355.) Section 6807, *supra,* does not go fur-

ther than to declare that the judgment is a lien upon the real property owned by the judgment debtor, and we may not conclude that in the enactment of section 6821, thus bringing within reach of the execution interests which were theretofore not subject to it, the intention was also, by bare implication, to extend the lien to them, as to real estate appearing by the record to be owned by the defendant, and thus create a new right.

Considering the subject of lands fraudulently conveyed as affected by the judgment, Mr. Freeman says: "The right to issue execution and to satisfy it by the sale of the defendant's real estate ordinarily implies that the judgment is a lien upon such real property. There are manifest difficulties in extending this rule to all cases where real property has been transferred to hinder or defraud creditors. In the first place, the apparent title is in the fraudulent vendee, and nothing appears of record to impugn the fairness of the transfer or to warn purchasers and encumbrancers that it remains subject to execution against the vendor. In the second place, the title in fact passes by the transfer, not only as between the parties, but also as against creditors who do not assail the transfer by some proceeding at law or in equity having for its object the subjection of the property to the payment of their claims against the vendor. * * * On the levy of the execution, its lien may, as against persons not purchasers or encumbrancers in good faith and for value, relate back to the rendition or docketing of the judgment, and in some of the states a judgment is a lien against lands fraudulently conveyed for all purposes, and cannot be displaced in favor of any junior judgment or other lien, the holder of which first proceeds either at law or in equity to seek satisfaction out of the property so conveyed. But we think the better rule is that one who has obtained judgment, and has not by levy or otherwise taken any further steps to obtain satisfaction out of property fraudulently transferred, has no lien thereon, and in the event of the bankruptcy of the defendant that he should not be awarded preference as a lienholder; and, even if he may be regarded as having a lien, he cannot lie idle until others have

by their superior diligence discovered the fraud and commenced proceedings in equity to thwart it by obtaining the cancellation of the conveyance, and then step forward and reap the first fruits of their diligence." (Freeman on Judgments, sec. 350.)

Whether Edward King be regarded as a fraudulent grantor or a *cestui que trust,* his interest did not appear of record. Hence the lien of the judgment did not attach, and Bordeaux was at liberty to accept the conveyance from John R. King to secure the loan made to Edward King. He was as free to deal with reference to the interests of Edward King in the property as he would have been had his dealings been with reference to personal property belonging to Edward King. By their execution proceedings the plaintiffs became vested with Edward King's interest, subject, however, to the lien of Bordeaux under his mortgage, and acquired the right to discharge it by payment of the debt. It may be, also, that the sheriff's deed affected Davenport with notice of the Edward King interest. If so, plaintiffs' rights as against him are the same as they were against Bordeaux; for in that event Davenport by the conveyance to him was merely substituted to Bordeaux's right as mortgagee. Upon these matters we express no opinion. In any event, the plaintiffs cannot have their title quieted without discharging the mortgage debt. In this case they have not [3] offered to do so, merely relying upon their claim under their judgment. It follows, therefore, that the decision of the district court in favor of defendant was correct.

In entering judgment, however, the court awarded possession of the property to defendant. If by his conveyance he was [4] merely substituted to the rights of Bordeaux as mortgagee, he is not entitled to possession. The judgment should, therefore, not have gone further than to dismiss the action with costs, leaving the parties to have their rights determined in an appropriate action brought for that purpose.

The district court is accordingly directed to amend the judgment in this particular. So amended, it will stand affirmed.

The order denying the motion for a new trial is affirmed.   The defendant is entitled to his costs on the appeal.

*Modified and affirmed.*

MR. JUSTICE SMITH and MR. JUSTICE HOLLOWAY concur.

