GAINES, Respondent, *v.* VAN DEMARK, Appellant.

(No. 7,714.)

(Submitted November 15, 1937.   Decided December 13, 1937.)

[74 Pac. (2d) 454.]

2

*Messrs. Ford & Fitzstephens,* and *Mr. Sam Goza, Jr.,* for Appellant, submitted a brief; *Mr. Fitzstephens* argued the cause orally.

4

*Mr. D. W. Doyle* and *Mr. Samuel M. Bowe,* for Respondent, submitted a brief; *Mr. Bowe* argued the cause orally.

6

MR. JUSTICE STEWART delivered the opinion of the court.

This is an action to quiet title to certain land in Glacier county. The appeal is from a decree by which plaintiff was adjudged the owner of an undivided seven-ninths interest therein, and the defendant the owner of an undivided two-ninths interest. By the appeal, defendant, as appellant, seeks to have the decree modified so as to reduce plaintiff's (respondent's) interest to an undivided five-ninths, and to enlarge her interest to an undivided four-ninths. The record shows that the action was originally instituted against two defendants, but only one answered; the other appeared by general demurrer, subsequently withdrawn, and default was entered against him. The parties will be mentioned as they were designated in the trial court.

The case was tried by the court on an agreed statement of facts which disclose the following chain of events with respect to the history and disposition of the controverted two-ninths interest. On December 27, 1919, defendant's predecessor in interest, one Whetstone, obtained a judgment, duly docketed, against Grover C. Gaines, plaintiff's predecessor in interest of the two-ninths interest. On December 23, 1923, Henry C. Gaines, the father of Grover C. Gaines, died intestate, leaving as his heirs at law his wife and three children, one of whom was Grover C. Gaines. On January 23, 1924, plaintiff, widow of deceased, filed petition for letters of administration which were subsequently issued to her. September 6, 1924, Grover C. Gaines and others executed and delivered a quitclaim deed to plaintiff which included the two-ninths interest involved here. This deed was not filed for record with the county clerk and recorder until November 30, 1925. Also on September 6, 1924, petition for final distribution was filed by the widow, as administratrix, subsequent, however, to the deed to her of the same date. On September 17, 1924, decree of final distribution was signed by the judge which decree along with other distributions, distributed the undivided two-ninths interests here in controversy to Grover C. Gaines. The decree of distribution was not

filed with the clerk of court until July 18, 1925, ten months after the signing thereof. On the same date, July 18, 1925, a writ of execution was issued upon the judgment procured by defendant's predecessor in interest, Whetstone, and the two-ninths interest of Grover C. Gaines was thereafter sold at sheriff's sale and by mesne conveyance acquired by defendant herein along with an additional two-ninths interest in the same land. Thereafter, on November 24, 1936, plaintiff instituted this action to quiet title.

By stipulation of counsel, the only question for decision by the trial court was as to the respective rights of the parties to the two-ninths interest in the land inherited by Grover C. Gaines. The assignments of error raise this single issue and squarely challenge the action of the trial court in decreeing title to this portion of the land to plaintiff rather than defendant.

Plaintiff bases her claim of title upon the quitclaim deed, executed and delivered to her by her son, Grover C. Gaines, on September 6, 1924. The agreed statement of facts shows that this transfer was made without "monetary consideration."

Defendant's claim of title is based upon a quitclaim deed executed by a grantee of the purchaser at the sheriff's sale and filed for record subsequent to the filing of plaintiff's deed. Defendant introduced the abstract of title to the land and the court admitted it in evidence. Upon this evidence and the stipulated agreement of facts, defendant rested his case.

The question thus presented is whether the lien of the Whetstone judgment attached to the interest of Grover C. Gaines as heir at law of his father, who died intestate. Otherwise stated, Does the lien of a judgment attach to the interest of an heir at law upon the death of the decedent?

The lien of a judgment depends upon the express provisions of the statute, and the general rule is that a judgment is a lien against the real estate of a judgment debtor only as provided by statute. (15 R. C. L., sec. 250, p. 794 et seq.; *McMillan* v. *Davenport*, 44 Mont. 23, 118 Pac. 756, Ann. Cas. 1912D, 984.) The statutory provision is section 9410, Revised Codes. The terminology of this section is definite in its inclusion of real

property. The pertinent part clearly and expressly provides that: "From the time the judgment is docketed it becomes a lien upon all real property of the judgment debtor * * * owned by him at the time, or which he may afterward acquire." Such a lien continues for six years. The property interest in controversy here necessarily came within the designation of "property afterwards acquired," if it was ever acquired by the heir at all.

The law is well settled in this state that where one dies intestate, title to his property, real and personal, vests immediately in his heirs. Section 7072, Rev. Codes; see *In re Estate of Clark*, 105 Mont. 401, 74 Pac. (2d) 401, and cases therein cited. Such transfer is by operation of law, which by statute is given the same force and effect as a transfer in writing. See section 6859, Revised Codes, which reads as follows: "An estate in real property, other than an estate at will or for a term not exceeding one year, can be transferred only by operation of law, or by an instrument in writing subscribed by the party disposing of the same, or by his agent thereunto authorized by writing." This being the law, the conclusion is inescapable that section 9410, supra, is broad enough to include, and does include, an interest in realty, the title to which vests subsequent to the docketing of the judgment and before satisfaction of the judgment lien.

There can be no question but what a judgment may constitute a part of a chain of title to real or personal property. (*Wills* v. *Morris*, 100 Mont. 514, 523, 50 Pac. (2d) 862, and authorities therein cited.) It is apparently the contention of plaintiff that in order for a judgment lien to attach, some interest of the judgment debtor must be disclosed of record in the county recorder's office. In support of this conclusion the following decisions were cited: *McMillan* v. *Davenport*, supra; *Piccolo* v. *Tanaka*, 78 Mont. 445, 253 Pac. 890; *Isom* v. *Larson*, 78 Mont. 395, 255 Pac. 1049; *Johannes* v. *Dwire*, 94 Mont. 590, 23 Pac. (2d) 971. Counsel for defendant take issue with the contention on this point, and argue that the cited Montana decisions do not support such theory in view of the facts of this

case, because the interest here involved became by operation of law a vested interest, and was not a hidden, secret interest, legal or equitable such as those involved in the cited cases.

It must be remembered that the interest in the land here in question was, from its inception, that is, from the date of the death of the father, a legal vested interest, "subject to the control of the district court, and to the possession of any administrator appointed by that court for the purposes of administration." (Sec. 7072, Rev. Codes; see, also, sec. 10139; *Hoppin* v. *Long*, 74 Mont. 558, 241 Pac. 636; *State ex rel. Petters & Co.* v. *District Court*, 76 Mont. 143, 245 Pac. 529.)

A casual reading of the cases relied upon, and a consideration of some of the general statements therein employed, might lend support to plaintiff's theory. However, an examination of the facts and issues in each of the opinions discloses that the interests there involved were equitable in character and were hidden or undisclosed. They were not shown in any records, private or public, available to the interested parties. Here it cannot fairly be said that the interest was concealed or undisclosed. Thus is demonstrated the necessity for the well-established rule that "in considering the meaning and intent of the language of an opinion one must have constantly in mind the facts of the case in which the opinion is written." (*Sun River S. & L. Co.* v. *Montana Trust & Sav. Bank*, 81 Mont. 222, 243, 262 Pac. 1039, 1047; *Forbes* v. *Mid-Northern Oil Co.*, 100 Mont. 10, 12, 45 Pac. (2d) 673.) The inapplicability of the rule recognized in the cases becomes at once apparent when the fact situation existent here is compared with the facts of the cited cases.

The case of *Butterwick* v. *Fuller & Johnson Mfg. Co.*, 140 Minn. 327, 168 N. W. 18, is also relied upon by plaintiff, but we do not think that case is in point here either. It does not support a rule applicable for a decision of this controversy. (See *Emerson-Brantingham Imp. Co.* v. *Cook*, 165 Minn. 198, 206 N. W. 170, 43 A. L. R. 41.)

It becomes at once apparent that plaintiff seeks to attach too much significance to the statutes with relation to the records of the county recorder's office and the necessity for a

10

record there. It is true that sections 4801 and 4802 of our Codes do provide for the recording of final judgments, or certified copies thereof, in the office of the county recorder, and do define the effect thereof so far as imparting constructive notice to lienholders and others is concerned, but they do not provide that a judgment can attach as a lien only when so recorded. We have heretofore mentioned the provisions of section 9410. The effect of that section is not conditioned upon a judgment of the district court being carried into the records of the county recorder. That section, as we have observed, is positive in its terms and declares that the lien exists from the time of the docketing of the judgment.

The decree of distribution was not the source of, but in a sense quieted, the title of the heirs to the property, although the actual title had been previously vested in them, subject only to the lien of the debts of the deceased, expenses of the administration of his estate, family allowances, etc. Here, the already vested title was good against everything and everybody else. The distribution and settlement of the estate satisfied the lien of these charges. Previous to that time the title was good as against the world at large, but not absolute as to these items, because, by the terms of the statutes under which the heir took his interest, provision was made to still hold a lien within the terms of the statute. (*Hoppin* v. *Long,* supra; *State ex rel. Petters & Co.* v. *District Court,* supra.) Under such explicit conditions, all of the property of deceased was liable for his debts, etc. Real estate was subject to sale by the administratrix under order of the court and for the purpose of obtaining funds to discharge such pre-existing and accruing obligations. (Sec. 10195, Rev. Codes.) Other than that, the share of the heir passed to and vested in him absolutely.

The probate laws require the performance of several specific things in the course of the administration of an estate. Here they required the proof of the death of the deceased, the elder Gaines, and a series of other acts by the court and by the administratrix, who was an officer of the court, all as enumerated in the statutes and all leading up to the decree of distribution, and

all accomplished previous to such decree as a foundation there-for. It must be presumed that they were all done. (Sec. 10606, subds. 15 and 33, Rev. Codes.)

The decree of the district court is erroneous. It is therefore reversed, with instructions to modify the same so as to decree an undivided five-ninths interest in the property to plaintiff and an undivided four-ninths interest to defendant.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES ANDERSON, MORRIS and ANGSTMAN concur.