In re Bonnie G. SNAVELY, Debtor.

**Douglas E. Miller, Appellant,**

v.

**Bonnie G. Snavely, Appellee.**

**BAP No. WW–03–1605MASP.**
**Bankruptcy No. 02–13205–SJS.**
**Adversary No. 03–01025–SJS.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on June 25, 2004.

Decided Aug. 23, 2004.

Michael J. Gearin, Preston, Gates & Ellis, Seattle, WA, for Douglas E. Miller.

Jerret E. Sale, Seattle, WA, for Bonnie G. Snavely.

Before: MARLAR, SMITH and PERRIS, Bankruptcy Judges.

## OPINION

MARLAR, Bankruptcy Judge.

### INTRODUCTION

A judgment creditor appeals summary judgment disallowing his secured claim, due to his failure to create a judgment lien under Montana law. The Montana federal lien statute, MCA § 25–9–303, requires a federal judgment creditor to file a transcript of the judgment docket of the District Court with the Montana state district court clerk.[1] Instead, this creditor recorded a certified copy of the judgment with the county clerk. We hold that recordation pursuant to the Montana constructive notice statutes did not create a lien, and AFFIRM.

### FACTS

■ On January 25, 2002, creditor Douglas E. Miller ("Miller") obtained a judgment ("Judgment") in the approximate amount of $300,000 against Bonnie G. Snavely ("Debtor") in United States Bankruptcy Court for the District of Montana. The Judgment was entered on the bankruptcy court docket on the same day.[2]

The bankruptcy court clerk "presented" the Judgment to the District Court clerk's office in Butte.[3] See Affidavit of Bernard McCarthy, Clerk of Bankruptcy Court (August 5, 2003), at 1–2 ¶ 3. Debtor disputed whether the Judgment was actually registered or docketed with District Court. It is undisputed that Miller did not obtain a transcript of the District Court Judgment docket.

Instead, in an attempt to create a lien on Debtor's real property in Montana, Miller filed a certified copy of the Judgment with the county recorders (denominated in the statutes and here as "county clerk") of Missoula and Flathead counties, on January 28, 2002 and February 7, 2002, respectively.

On March 15, 2002, Debtor filed a chapter 11[4] bankruptcy petition in the Western District of Washington. Miller filed a proof of secured claim against the bankruptcy estate based on the recorded Judgment.

Debtor immediately initiated an adversary proceeding contesting the validity of the secured claim. She alleged that Mil-

---

**1.** This opinion will refer to United States District Court as "District Court" and to the Montana state district court as "state district court." Courts in Montana are designated: "supreme court, district courts, justice courts, and such other courts as may be provided by law." *Mont. Const.* art. 7, §§ 1 and 4. The state district courts have jurisdiction over civil actions over $50. *See generally Want's Federal–State Court Directory*, at 180 (2004).

**2.** The Judgment is not final and is currently on appeal to the Ninth Circuit. Under federal law, the pendency of an appeal does not alter the res judicata effect of an otherwise final judgment. *See Tripati v. Henman*, 857 F.2d 1366, 1367 (9th Cir.1988).

**3.** The District Court keeps a "book known as 'civil docket'" of each civil action by file number, and records of all judgments and orders. *See* Fed.R.Civ.P. 79(a) and (b).

**4.** Unless otherwise indicated, chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and Federal Rules of Bankruptcy Procedure ("Fed. R. Bankr.P."), Rules 1001–9036, which incorporate certain Federal Rules of Civil Procedure ("Fed. R. Civ.P.").

ler's claim failed "to include sufficient information to establish that Mr. Miller performed the acts necessary under Montana law to create a lien on any of the Debtor's property prior to the commencement of this bankruptcy case." Complaint (Jan. 24, 2003) p. 2, ¶ 3.4.

■ Miller countered by filing a motion for partial summary judgment. He maintained that Montana has alternative methods of creating and perfecting liens based on federal judgments. He argued that recordation of the certified Judgment with the two county clerks created and perfected a lien against Debtor's real property in those counties.[5]

Debtor opposed the motion and filed a cross-motion for summary judgment, seeking a determination that Miller's judgment lien was invalid. Debtor maintained that Miller failed to (1) docket the bankruptcy court Judgment with District Court; (2) obtain a transcript of the Judgment docket from District Court; and (3) file such transcript with the state district court clerk of Missoula and Flathead counties, in compliance with MCA § 25–9–303.

Following a hearing on the cross-motions, the bankruptcy court determined that Miller had not followed the proper procedures to create a lien under Montana law. The court concluded that lien stat-

utes are technical and must be strictly followed. It ruled:

> [I]t appears that in order to perfect a judgment lien from a judgment of Bankruptcy Court, that judgment has to be docketed with the Clerk of the Federal District Court; and then to become a lien, it has to be docketed or recorded as required by the local statute. Insofar as I can tell, none of that was done here.

Transcript of Proceedings (Sept. 17, 2003), at 31:3–10.

In determining that Miller's lien was void and of no effect, the bankruptcy court also disallowed his secured claim. The court's order and partial judgment were entered on November 14, 2003, with a certification for immediate appeal as a final judgment. See Fed. R. Bankr.P. 7054/ Fed. R. Civ. P. 54(b). See also Belli v. Temkin (In re Belli), 268 B.R. 851, 856–57 (9th Cir. BAP 2001) (grant of partial summary judgment without Rule 54(b) certification is interlocutory order). Miller timely appealed.

### ISSUE

The sole issue is whether the exclusive method of creating a lien that is based on a federal judgment, under Montana law, is MCA § 25–9–303, which statute requires a transcript of the District Court judgment docket to be filed with the state district court clerk.[6]

---

5. To support his position, Miller filed the declaration of a real estate attorney and title company owner as well as title company documents to show that the recorded judgment lien was necessarily listed as an exception or prior endorsement on a Title Commitment or Title Insurance Policy concerning the property.

Debtor objected to the presentation of an expert opinion on a purely legal question, and has reasserted that objection on appeal.

We agree that Miller's evidence was not relevant to the correct interpretation of Montana law. To the extent that the bankruptcy

court reached the same conclusion in entering judgment in favor of Debtor, it did not abuse its discretion. See Younie v. Gonya (In re Younie), 211 B.R. 367, 372 (9th Cir. BAP 1997) (evidentiary questions decided in the context of summary judgment are reviewed for an abuse of discretion), aff'd, 163 F.3d 609 (9th Cir.1998).

6. Our decision today is narrow. We leave for another day the issue of whether a transcript of the bankruptcy court docket would also meet the requirements of MCA § 25–9–303. Furthermore, we offer no opinion as to whether Miller could also utilize the provi-

## STANDARD OF REVIEW

■ We review de novo a bankruptcy court's grant of summary judgment. *See Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1245 (9th Cir.2001). We must determine whether, viewing the evidence in the light most favorable to the nonmoving party, genuine issues of material fact remain for trial; we also must determine whether the bankruptcy court correctly applied the relevant substantive law. *See Gill v. Stern (In re Stern)*, 345 F.3d 1036, 1040 (9th Cir.2003).

Because the material facts in this case are undisputed, we review the bankruptcy court's interpretation of Montana law de novo in order to determine if the bankruptcy court correctly applied the substantive law. *See Kipperman v. Proulx (In re Burns)*, 291 B.R. 846, 849 (9th Cir. BAP 2003).

## DISCUSSION

On appeal, Miller claims to have a valid judgment lien either because (1) the lien was created at the time the Judgment was docketed in District Court; or (2) the lien was created and perfected at the time of recordation of the certified copy of the Judgment with the county clerk.

### A. Federal Law Defers to State Scheme

Miller contends that a lien was created when the Judgment was registered with District Court. Miller cites as authority for the lien creation 28 U.S.C. § 1962 ("§ 1962"). Assuming, arguendo, that the Judgment was properly docketed in District Court, Miller's reliance on § 1962 is misplaced. That statute clearly provides that a federal judgment creditor must follow the applicable state law authorizing the creation and perfection of liens. It reads:

#### § 1962. Lien

Every judgment rendered by a district court within a State shall be a lien on the property located in such State in the same manner, to the same extent and under the same conditions as a judgment of a court of general jurisdiction in such State, and shall cease to be a lien in the same manner and time. This section does not apply to judgments entered in favor of the United States. Whenever the law of any State requires a judgment of a State court to be registered, recorded, docketed or indexed, or any other act to be done, in a particular manner, or in a certain office or county or parish before such lien attaches, such requirements shall apply only if the law of such State authorizes the judgment of a court of the United States to be registered, recorded, docketed, indexed or otherwise conformed to rules and requirements relating to judgments of the courts of the State.

28 U.S.C. § 1962.

■ "Section 1962 strikes a bargain with the states by allowing them to set the rules as to how federal court judgments will be recorded, on condition that the federal judgments be treated by the same rules as state judgments." *In re Sterling Die Casting Inc.*, 132 B.R. 99, 101 (E.D.N.Y.1991). "The main purpose of 28 U.S.C. § 1962 is merely to conform with congressional policy that execution of federal judgments be done according to state law." *Ford Consumer Fin. Co. v. McDo-*

sions of the Montana Uniform Enforcement of Foreign Judgments Act, MCA §§ 25–9–501 to 25–9–508, as that issue was not raised in the proceedings. *See Robinson v. First Wyo. Bank, N.A.*, 274 Mont. 307, 316–17, 909 P.2d 689, 695 (1995) (holding that the Uniform Act and MCA § 25–9–303 are alternative methods for filing a judgment of a Montana federal court in Montana state court).

*nell (In re McDonell)*, 204 B.R. 976, 980 (9th Cir. BAP 1996), *aff'd mem.*, 164 F.3d 630 (9th Cir.1998).

■■ Miller's bare assertion that the mere filing of the Judgment in District Court created a lien is not supported by the facts and law. Montana has passed legislation authorizing federal court judgments to be docketed to conform to the rules and requirements relating to state court judgments. It is only in the absence of such a state statute, or if a state statute discriminates between federal and state judgments in its requirements for recordation or docketing, that a federal court judgment will constitute a lien on the judgment debtor's property throughout the court's territorial jurisdiction, without registration or docketing in the separate counties within that district. *See Rhea v. Smith*, 274 U.S. 434, 441–44, 47 S.Ct. 698, 71 L.Ed. 1139 (1927); *Sterling Die Casting*, 132 B.R. at 102–03. Miller has presented no argument that Montana's federal lien statute is not in full compliance with § 1962.

Therefore, Miller's first contention that his judgment lien was created upon the docketing of the Judgment in District Court is without merit.

### B. Montana's Federal Lien Statute: MCA § 25–9–303

Montana's statute conforms with § 1962 by expressly providing how federal judgments become liens. MCA § 25–9–303 provides, in pertinent part:

**25–9–303. Filing of transcript of docket of federal court—lien—expiration**

(1) A transcript of the original docket of a judgment that is rendered in the circuit or district court of the United States, ninth circuit, district of Montana, and that is certified by the clerk of court may be filed with the district court clerk of any county. From the time of the filing, the judgment becomes a lien upon all real property of the judgment debtor that is not exempt from execution in the county and that is either owned by the judgment debtor at the time or afterward acquired by the judgment debtor before the lien expires. Except as provided in subsection (2), the lien continues for 10 years unless the judgment is previously satisfied.

MCA § 25–9–303(1).

■ The Montana rules of statutory construction "require the language of a statute to be construed according to the plain meaning of the words used. If the language is clear and unambiguous, then no further interpretation is required." *Sherner v. Conoco, Inc.*, 298 Mont. 401, 412, 995 P.2d 990, 998 (2000) (internal citations omitted).

■ In addition, Montana law requires strict compliance with the lien statutes. "The lien of a judgment depends upon the express provisions of the statute, and the general rule is that a judgment is a lien against the real estate of a judgment debtor only as provided by statute." *Gaines v. Van Demark*, 106 Mont. 1, 74 P.2d 454, 456 (1937).

In this case, there was evidence that Miller's Judgment was registered in District Court. Although that fact is disputed by Debtor, the undisputed facts are that Miller did not, thereafter, obtain a "transcript" of the Judgment docket from the District Court, nor did he file such transcript with the state district court clerk. Therefore, the bankruptcy court's interpretation of the Montana statutes was appropriate for summary judgment.

Miller's next contention is that he did not need to register the Judgment with the District Court because the bankruptcy court has its own docket. *See* Fed. R.

Bankr.P. 5003(a) (providing that the bankruptcy clerk shall keep a docket in each case and enter thereon each judgment). This argument is off the mark since Miller did not file a "transcript" from either the bankruptcy court or the District Court.

The bankruptcy court's handling of the judgment in this case was consistent with Rule 5003(c), which provides:

> (c) **Judgments and Orders.** The clerk shall keep ... a correct copy of every final judgment or order affecting title to or lien on real property or for the recovery of money or property, and any other order which the court may direct to be kept. *On request of the prevailing party, a correct copy of every judgment or order affecting title to or lien upon real or personal property or for the recovery of money or property shall be kept and indexed with the civil judgments of the district court.*

Fed. R. Bankr.P. 5003(c) (emphasis added).[7]

This indexing procedure was transferred to Rule 5003(c) from former Rule 9021(b) by the 1987 amendments to the Rules. *See* 9–10 *Collier on Bankruptcy* ¶ 5003.-RH[1], at 5003–14 to 14.1, and ¶ 9021.-RH[2], at 9021–9 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.2004). *See also* Fed.R.Bankr.P. 9021 (adopting Fed. R.Civ.P. 58 and stating that any reference to Fed.R.Civ.P. 79(a) "shall be read as a reference to Rule 5003"). Former Rule 9021(b) provided, in pertinent part:

(b) **District Court Record of Judgments of Bankruptcy Courts.** On certification by the clerk of the bankruptcy court to the clerk of the district court of a copy of a judgment of the bankruptcy court for the recovery of money or property, the clerk of the district court shall keep and index the copy in substantially the form and manner prescribed by Rule 79 F.R. Civ. P. for judgments of the district court.... [*A*]*fter it has been so indexed, the judgment shall have the same effect and may be enforced as a judgment of the district court so indexed.*

Fed. R. Bankr.P. 9021(b) (1986) (emphasis added).

■ By voluntarily registering the bankruptcy court judgment in District Court, the judgment so registered has the same effect and may be enforced as a District Court judgment. *See also* Fed. R. Bankr.P. 7069/Fed. R. Civ. P. 69(a) (providing that the process to enforce a judgment in bankruptcy court is "in accordance with the practice and procedure of the state in which the district court is held").

■ Montana law can be construed to require such action for lien commencement and enforcement pursuant to the federal judgment. MCA § 25–9–303 expressly provides the method for creating a lien from a "federal" judgment rendered in the "district court of the United States." Reading this statute together with the federal rules, which provide the means for converting a bankruptcy court judgment

---

**7.** The editor's comment to paragraph (c) explains the difference between keeping copies of the judgments and orders and registering the judgments and orders, as follows:

> The clerks of the bankruptcy courts, at present, apparently have neither the authority nor the facilities for *registering* judgments and orders.
>
> It appears that, as a local practice in some districts, the clerk of the bankruptcy court registers judgments and orders; in others only the clerk of the district court does; and in still others both the bankruptcy clerk and the clerk of the district court register judgments and orders entered by a bankruptcy judge.

Norton Bankruptcy Law & Practice 2d, *Bankruptcy Rules*, Editor's Comment to Rule 5003(c), at 303–04 (West 2003) (emphasis added).

into a District Court judgment for purposes of state court enforcement, it is apparent that the bankruptcy court did not err in determining that, under Montana law, the bankruptcy court Judgment had to be registered with the District Court in the first instance.

■■■ Montana law also requires a "transcript"[8] of the federal docket to be filed, rather than a copy of the Judgment itself, and that such transcript be filed with the state district court clerk. This rule is understandable when looking at Montana law, which generally requires that a judgment rendered in the state district court be *docketed* by that court's clerk in order for a lien to be created against real property in that county. *See* MCA § 25–9–301 (providing that a judgment becomes a lien from the time it is docketed). To create a lien against real property in *another* county, a transcript of the original docket must be filed with the other county's district court clerk. *See* MCA § 25–9–302.

Once these steps are completed, the federal judgment lien is created and attaches.

*See, e.g., Hannah v. Martinson,* 232 Mont. 469, 471–72, 758 P.2d 276, 278 (1988) (lien arises at the time the judgment is docketed and is a general lien upon all real estate subject to prior liens); MCA §§ 25–9–301 and § 25–9–303 (providing that from the time of docketing or proper filing, in the case of the federal judgment, the judgment becomes a lien upon all nonexempt real property of the judgment debtor).

Therefore, MCA § 25–9–303 is Montana's explicit statutory provision for docketing a federal judgment before a lien commences.

### C. Constructive Notice Statute Did Not Create Lien

■■■ Miller maintains that he followed an alternative procedure for both creating and perfecting[9] a judgment lien that is set forth in MCA § 70–21–306. This is Montana's constructive notice statute, which provides as follows:

**70–21–306. Recording judgments to impart notice**

Every certified copy of a judgment of partition *or any other judgment,* filed

---

**8.** A "transcript" of judgment is not defined in the federal rules or the Montana statutes or local court rules. The ordinary meaning of "transcript" is "[a] handwritten, printed, or typed copy . . . ." *Black's Law Dictionary,* p. 1503 (7th ed.1999). A "transcript" differs from an "abstract of judgment," which is defined as "[a] copy or summary of a judgment . . . ." and which is typically in an official format. *Id.* at 9.

Although the parties were unable to explain precisely what a transcript of judgment in Montana consists of, they did not dispute the fact that such transcript had neither been obtained from the federal court nor filed with the state district courts by Miller.

**9.** "Perfection" of the judgment lien is not expressly required by the Montana statutes. Perfection is a concept used to determine the priority of a security interest against competing interests in the collateral. It refers to that

single date, or moment in time, when the state perfection statute is satisfied, and the lien becomes good against other creditors who can no longer obtain superior rights. *See Long v. Joe Romania Chevrolet, Inc. (In re Loken),* 175 B.R. 56, 62 (9th Cir. BAP 1994). The essence of perfection is to furnish public notice of the secured party's interest in the collateral. *See Biggins v. Southwest Bank,* 490 F.2d 1304, 1311 (9th Cir.1973).

In the bankruptcy context, § 544(a)(3) allows the trustee, as a hypothetical bona fide purchaser, to avoid a lien on real property; whether the lien is enforceable against a bona fide purchaser is determined under state law. *See Saslow v. Andrew (In re Loretto Winery Ltd.),* 898 F.2d 715, 718 (9th Cir.1990).

Whether MCA § 70–21–306 requires recordation of a judgment in order for a judgment creditor to obtain lien priority over a purchaser or bona fide creditor is not an issue before us and is beyond the scope of this appeal.

and recorded as provided in 7–4–2613, from the time of filing the same for record *imparts notice* to all persons of the contents thereof, and subsequent purchasers, mortgagees, and lienholders purchase and take with like notice and effect as if such property or judgment was a duly recorded deed, grant, or transfer.

MCA § 70–21–306 (emphasis added).

Section 7–4–2613, incorporated by § 70–21–306, sets forth the type of documents that may be recorded in order to impart constructive notice. It provides, in pertinent part:

**7–4–2613. Documents subject to recording**

(1) The county clerk shall, upon the payment of the appropriate fees, record by printing, typewriting, photographic, micrographic, or electronic process or by the use of prepared blank forms:

 (a)(i) subject to subsection (1)(a)(ii), deeds, grants, transfers, *certified copies of final judgments or decrees partitioning or affecting the title or possession of real property any part of which is situated in the county*, contracts to sell or convey real estate and mortgages of real estate, releases of mortgages, reconveyances by trustees of deeds of trust, assignments of mortgages and deeds of trust, powers of attorney to convey real estate, leases that have been acknowledged or proved, and abstracts of the instruments that have been acknowledged or proved;

 . . . .

 (g) transcripts of judgments that by law are made liens upon real estate;

 . . . .

MCA § 7–4–2613 (emphasis added).

Subsection (1)(a)(i) provides for recordation of "certified copies of final judgments or decrees partitioning or affecting the title or possession of real property . . . ." In filing the certified copy of the Judgment, Miller erroneously relied on that subsection. The Judgment did not affect the title to Debtor's real property, but was only a judgment for money.

The Judgment more appropriately came under subsection (1)(g) covering "transcripts of judgments that by law are made liens upon real estate." Therefore, this statute also would require the filing of a transcript of the Judgment docket rather than a certified copy of the Judgment. *See* MCA §§ 25–9–301 and 25–9–302, *supra*. That way, the laws are consistent, that a judgment already docketed with the state district court clerk simply be recorded in order to impart constructive notice.

■ Furthermore, § 70–21–306 notice determines lien priority of already existing liens; it is not a lien-creating statute. *See Washington v. Slack*, 249 Mont. 56, 62, 813 P.2d 447, 451 (1991) (prior recorded mortgage took priority over recorded abstract of judgment). The Case Notes in the annotated statutes supports this conclusion:

> **Recording Not Condition Precedent to Judgment Becoming a Lien:** This section and 7–4–2613 define the effect of recording a final judgment as far as imparting constructive notice is concerned, but they are not controlling as to when the judgment becomes a lien. It is 25–9–301 which determines when the lien becomes effective. The lien attaches when the judgment is docketed, and recordation of the judgment is not made a condition precedent to its becoming a lien. *Gaines v. Van Demark*, 106 Mont. 1, 74 P.2d 454 (1937).

MCA § 70–21–306, Case Notes.

Miller also cites *Gaines* to support his theory of a dual method of lien creation. In *Gaines*, the parties litigated over a par-

tial interest in real property. The defendant's predecessor-in-interest had docketed a judgment against the original owner, in compliance with the former general lien statute, § 9410 (now MCA § 25–9–301). Former § 9410 provided that "[f]rom the time the judgment is docketed it becomes a lien upon all real property of the judgment debtor . . . ."

Years later, the property was transferred to the plaintiff via a quitclaim deed; and plaintiff duly recorded the deed. In a subsequent quiet title action, the plaintiff argued that the defendant judgment creditor's interest was required to be recorded in the county recorder's office. The Montana Supreme Court rejected that argument and reversed in favor of the defendant, holding that a judgment lien had been created at the time the judgment was docketed and "became by operation of law a vested interest." *Gaines*, 74 P.2d at 456.

Miller contends that the *Gaines* court implied that constructive notice, provided by recording with the county clerk, also results in the attachment of a judgment lien. To the contrary, *Gaines* held that a lien was created because the defendant's predecessor-in-interest complied with the lien statute which provided, and still provides, that a judgment becomes a lien from the time the judgment is docketed. *Id.* at 456–57; MCA § 25–9–301(2) (providing that "[f]rom the time the judgment is docketed, it becomes a lien upon all real property . . . .").

Miller also makes a policy argument. He maintains that notice to third parties is the most important aspect of lien creation, and, hence, recording a judgment according to MCA § 70–21–306 fulfills the legislative policy for lien creation. Assuming, arguendo, that Miller recorded the Judgment appropriately under § 70–21–306, that statute does not expressly contain lien-creating language. We cannot legislate from the bench to make the statute into something it is not, either in its plain language or in its historical application. We leave such matters to Montana's legislative process.

Finally, Miller maintains that the bankruptcy court elevated form over substance. We disagree. In Montana, as in most states, liens are creatures of statute. "How the lien is made to attach, to what extent and to what interest it attaches, are, within the restriction stated, matters to be determined by the terms of the statute granting it." *McMillan v. Davenport*, 44 Mont. 23, 118 P. 756, 758 (1911). *See also Gaines*, 74 P.2d at 456. Even if the Montana statutes do not recognize any nuances between bankruptcy court and District Court judgments, the lien statutes must be followed to the letter. As the bankruptcy court correctly acknowledged, a judgment creditor who desires to obtain a lien must "dot the i's and cross the t's." Transcript of Proceedings (Sept. 17, 2003), at 20:15–17.

## CONCLUSION

Montana state law requires a federal judgment creditor to file a transcript of the District Court judgment docket with the state district court clerk's office. So indexed, the judgment becomes a lien against the judgment debtor's real property in that county. Miller failed to follow these statutory procedures and, thus, his alleged judgment lien was invalid and unenforceable under federal or state law. The bankruptcy court properly entered partial judgment in favor of Debtor and disallowed Miller's secured lien claim as void and of no effect. **AFFIRMED.**