McDERMOTT MINING COMPANY, Appellant, *v.* McDERMOTT et al., Respondents.

(No. 1,420.)

(Submitted March 6, 1902. Decided July 28, 1902.)

*Estoppel—Deed—After-Acquired Title — Corporations—Mining Claim—Forfeiture—Purchase by Director.*

1. Compiled Statutes of 1887, Fifth Division, Sec. 267, provides that if any person convey any real estate by conveyance purporting to convey the fee simple, and shall not have the legal estate, but shall afterwards acquire the same, the estate subsequently acquired shall pass to the grantee. In a deed to a mining claim the grantor "granted, bargained, and sold" the same, and the *habendum* expressly covenanted that the grantor conveyed all right, title, interest, and estate which might thereafter be acquired by any patent issued by the government under the proceedings, previously instituted. *Held*, that under the statute the words "granted," etc., (as the court assumes) and under the common law the *habendum*, were sufficient to estop the grantor from asserting an after-acquired title inconsistent with the title intended to be conveyed.

2. A deed to a mining claim conveying all the owner's interest, and all estate that might be acquired under proceedings previously instituted, was in form sufficient to estop the grantor from asserting a title inconsistent with that intended to be conveyed. The grantee failed to do the required representation for a certain year, and did not resume work the next year until a third party had in good faith relocated the claim, and the relocator conveyed to the original grantor. *Held*, that such grantor was not estopped by his deed from asserting title under the deed to him from the relocator.

3. Where a mining claim is forfeited owing to the corporation owning it failing to do the required representation, a purchase of the claim by a director and trustee of the corporation from a relocator, in good faith, does not inure to the benefit of the corporation.

*Appeal from District Court, Granite County; F. H. Woody, Judge.*

ACTION by the McDermott Mining Company against Peter S. McDermott, as administrator of the estate of Michael McDermott, deceased, and others. From a judgment for defendants, and from an order denying a new trial, plaintiff appeals. Affirmed.

*Messrs. Rodgers & Rodgers, Mr. Ed. Scharnikow. Mr. H. P. Napton,* and *Messrs. Forbis & Evans,* for Appellant.

The question on the construction of Section 267 is not new in this state. The question was discussed in *Meyendorf* v. *Frohner,* 3 Mont. 282. We also call the court's attention to the case of *Shreve* v. *Copper Bell Mining Company,* 11 Mont. 309. Chief Justice Blake, after hearing this argument, cited to the contrary the case of *Kelley* v. *Taylor,* 23 Cal. 11, as sustaining a contrary principle, and then cited and approved *Clark* v. *Baker,* 14 Cal. 612, and numerous other decisions, laying down the rule that we contend for. When we consider that the question involved in *Shreve* v. *Copper Bell Mining Company* was as to the effect of a deed upon different locations, we cannot but conclude that the matter has been fully decided by the supreme court of this state, and that a deed which purported to convey the title to a mining claim conveys any title which the grantor may thereafter acquire in any manner to the same premises. (*Kerdaldie* v. *Larabee,* 89 Am. Dec. 205 ; *Dalton* v. *Hamilton,* 50 Cal. 422; *Vellejo L. Co.* v. *Viera,* 48 Cal. 372-379 ;*Quivy* v. *Baker,* 37 Cal. 465 ; *De Frieze* v. *Quint,* 94 Cal. 653 ; *Taylor* v. *Holter,* 1 Mont. 708; *Alexander* v. *Sherman,* 16 Pac. 45.)

An abandonment consist of both act and intention. There must be not only the act of abandonment—the going away from the property—but the purpose must be formed not to again return and claim the property, and to leave it open to the appropriation of others. This cannot be said of the company or any of its officers or agents or stockholders. The only act of the company which it has been attempted to construe into abandon-

ment is its failure to do the assessment work for 1892. This
constitutes forfeiture and has never been held to be abandon-
ment. It lacks the essential element of intention. This prin-
ciple has been announced in numerous cases in Montana and
elsewhere. (*Gassert* v. *Noyes,* 18 Mont. 216; *Smith* v. *Hope,*
18 Mont. 432; *St. John* v. *Kidd,* 26 Cal. 264; *Moon* v. *Rollins,*
36 Cal. 333; *Stone* v. *Geyser Q. M. Co.,* 52 Cal. 315; *Mallett*
v. *Uncle Sam Co.,* 1 Nev. 188.)

It is claimed by respondents that inasmuch as the property
was not represented for the year 1892, it was subject to reloca-
tion by any one, and that its forfeiture by the company termi-
nated the fiduciary relation between it and McDermott, and left
him free to locate the property for himself. If this reasoning
be correct, then any agent or officer may relocate the property
of his principal, after forfeiture. That such is not the correct
doctrine all the authorities agree. If it were correct, we cannot
imagine a case where the agent might not relocate the forfeited
property of his principal, and there would be no authorities
holding him as trustee. There must be a forfeiture before there
can be a relocation. If forfeiture renders the property subject
to be taken by any one, why should we find authorities announc-
ing the doctrine that relocations made by the agents are in vio-
lation of their trust relations and are held for the principal's
benefit? The very statement of the proposition answers it.
If one who has a duty to perform to his principal may neglect
that duty, and then improve the opportunity to benefit himself,
through these same acts of neglect or malfeasance, then what
the law calls the fiduciary relation between principal and agent
is nothing more than a lure set to catch the principal. We re-
spectfully submit that a correct principle has been announced
by the authorities upon the question and that the cases are anal-
agous with the one under consideration. Of course, there are
differences of fact in all cases, but the governing principles must
be the same in all. (*Lockhart* v. *Rollins,* 21 Pac. 413; Lindley
on Mines, Sec. 407; *Utah M. Co.* v. *Dickert,* 21 Pac. 1002,
1009; *Largey* v. *Bartlett,* 18 Mont. 265.) Upon the general
question of fiduciary character between the trustee and the cor-

poration, and treating generally of acts similar to acts in this case, we cite the court the following authorities: Thompson on Corporations, 4009-10-11-12-16-22-23-24-29, 4070-72-73, and also the following cases which are illustrative of the question in this case: *San Francisco W. Co.* v. *Patee,* 86 Cal. 623; *Raleigh* v. *Fitzpatrick,* 43 N. J. Eq. 501; *Sargent* v. *Kansas Middling R. R. Co.,* 29 Pac. 1063; *Tyler* v. *Sanborn,* 4 L. R. A. 218, and notes; *Robinson* v. *Jewett,* 116 N. Y. 40; *Gower* v. *Anderson,* 59 Cal. 119; Meechem on Agency, 454-55-58.

*Mr. D. M. Durfee,* and *Messrs. McConnell & McConnell,* for Respondents.

MR. JUSTICE PIGOTT delivered the opinion of the court.

This action was brought to quiet title in the plaintiff to the Northwest lode mining claim, and to obtain a decree requiring the defendants to convey the property to the plaintiff. From an order refusing the plaintiff a new trial, and from the judgment, these appeals are prosecuted.

The following facts are conceded: Michael McDermott, whose administrator is one of the defendants, owned the Northwest lode claim (not patented) in 1889, and in that year he and others organized the plaintiff corporation, which, on August 14, 1889, purchased the claim, paying to McDermott therefor a part of its capital stock. In the granting clause of his deed, McDermott "granted, bargained, sold, remised, released, and forever quitclaimed" the Northwest lode mining claim. In the *habendum* and *tenendum* clause is the following covenant: "It is expressly covenanted that it is intended hereby to convey any and all right, title, interest and estate which may hereafter be acquired to said premises, or any part thereof, by virtue of any patent which may hereafter be issued by the United States government therefor under the proceedings heretofore instituted in that behalf." It does not appear that a patent was ever issued. Upon the delivery of the deed the plaintiff took possession, and expended $4,000 in working the claim. In June, 1890, the

plaintiff, not having been able to find any ore of value, and being without ready money, suspended work, closed the mine, and moved the machinery (which it had rented) therefrom. In the autumn of that year, one of the trustees of the plaintiff placed with McDermott a small amount of personal property belonging to it, with directions to take care of the same, and to look after the mining claim, his wages to be $25 a month, but he was not employed for any definite length of time. In 1891 the plaintiff caused to be done the annual work necessary to prevent a forfeiture. No work of any kind whatever was done by the plaintiff in or about the claim after 1891. Between June, 1890, and the 23d day of November, 1897,—a period of seven years and four months,—the board of trustees held no meeting and no entries in the books were made. From the time the plaintiff corporation was formed until the death of McDermott, he was one of its trustees or directors, and during the time the claim was worked he was employed as a common laborer thereon. The representation work not having been done for the year 1892, and work not having been resumed thereon after December 31st of that year, the mining ground became subject to relocation as part of the public mineral domain of the United States. On the 4th day of January, 1893, one Brogan duly located the mining ground in question as the "Shamrock," and entered into its possession. Thereafter, and on the 28th day of February, 1893, Brogan by deed conveyed the Shamrock claim so located by him to Michael McDermott for the consideration of $5. In August, 1897, McDermott died, and the defendant Peter S. McDermott was appointed administrator of his estate. The other defendants McDermott are the heirs at law of the decedent, and the remaining defendants were lessees having the option of purchasing the claim. In that month the officers of the plaintiff learned that there had been discovered in the claim a body of pay ore by the lessees; whereupon the board of trustees met in the following November, and a claim of ownership to the Shamrock lode was made. As we have said, the foregoing facts are undisputed.

The contested questions of ultimate fact are:   (1) Had the

plaintiff abandoned the Northwest lode claim prior to the location by Brogan? and, (2): If the claim was not so abandoned, did Michael McDermott, in violation of any duty which he owed to the company, allow the claim to be unrepresented for the year 1892, and cause Brogan to locate it for his benefit? These questions the jury and the court solved in favor of the defendants, finding that the plaintiff failed to represent the Northwest lode mining claim in 1892, with the the intention of abandoning it; that the plaintiff did abandon the claim on December 31, 1892; that Brogan located the Shamrock claim without any intention to convey the same to McDermott, and did not make the location for or in the interest of McDermott; and that McDermott was not, during the year 1892, the agent of the plaintiff, charged with the duty of seeing that the annual labor was done to prevent forfeiture.

Did the deed from McDermott to the plaintiff convey to it the title thereafter acquired by him from Brogan, or estop him from asserting, as against the plaintiff, the title obtained from Brogan? Did the title obtained by McDermott from Brogan inure to the plaintiff by virtue of any trust relation between McDermott and the plaintiff?

The rule of the common law is that when a deed of land contains a covenant of warranty or representation, express or implied, of title, particular or general, in the grantor, who had not then the title so warranted or represented, but afterwards acquires it by descent or purchase, such subsequently acquired title instantly inures to the benefit of the grantee. The grantor is estopped from asserting such title in himself as against his grantee; he is not permitted to contradict the terms of the deed by saying that he did not have the title which he represened or covenanted was his. So the practical effect of the estoppel is to invest the grantee with the title formally acquired by the grantor. This doctrine rests altogether upon the ground of estoppel. Except in so far as it had been modified by statute, it was in force in Montana when the deeds in the case at bar were made. Now, at the common law, the words "grant, bargain and sell," as they did not imply a covenant of warranty or rep-

resentation of title in the grantor, could not estop him from asserting a title which he subsequently acquired.  Nor did Section 285 of the Fifth Division, General Laws, Compiled Statutes, 1887, entirely change the unwritten law in this regard; for the covenants implied by the words quoted are that the grantor has not previously conveyed the same real estate, or any right, title, or interest therein, to any person other than the grantee, and that it is free from incumbrances made or suffered by the grantor or any person claiming under him.  But Section 267 provides: "If any person convey any real estate by conveyance purporting to convey the same in fee simple absolute, and shall not, at the time of such conveyance, have the legal estate in such real estate, but shall afterwards acquire the same, the legal estate subsequently acquired shall immediately pass to the grantee, and such conveyance shall be valid as if such legal estate had been in the grantor at the time of the conveyance."  According to the construction of this section in *Meyendorf* v. *Frohner,* 3 Montana Reports, 282, and in *Clark* v. *Baker,* 14 California Reports, 612, (76 Am. Dec. 449), the rule of the common law as to the effect of deeds under the Statute of Uses upon the subsequently acquired estate of the grantor has been changed thereby, and the words "grant, bargain and sell" serve to convey the after-acquired title.  We may therefore assume that, while the granting clause in the deed from McDermott to the plaintiff did not, when tested by the rules of the common law, serve to estop the grantor, yet that, under Section 267, *supra,* the clause had the effect of passing to the plaintiff, so long as it held under the deed, whatever outstanding title he might acquire; and we may also assume—though it is unnecessary to do so—that the language in the latter portion of the deed is sufficient, both at the common law and under the statutes, to estop McDermott and his privies from asserting title afterwards acquired by him or them inconsistent with the title intended to be conveyed by the deed. In other words, we may concede that the deed from McDermott to the plaintiff was effectual to convey to it any title which McDermott might thereafter acquire, provided the plaintiff still lawfully claimed under the deed.

But neither the rule of the common law nor that prescribed by Section 267, *supra,* has application to the present case. The court found that the plaintiff, with the intention to abandon it, failed to represent the Northwest lode claim in 1892, and actually did abandon it on December 31st of that year. The careful examination to which we have subjected the record enables us to say that the evidence was sufficient to justify this finding. Again: Even if there was not an abandonment it is admitted that, by reason of the plaintiff's neglect to represent in 1892, the claim was open to relocation and consequent forfeiture. While it was subject to forfeiture, Brogan located it. The court found that Brogan made the location in good faith for himself, and not for McDermott; that McDermott was not charged with the duty of seeing that the annual representation was performed; and that there was no agreement or conspiracy between McDermott and Brogan to locate the claim for the former's benefit; and these findings were justified by the evidence. Abandonment operated, *ipso facto,* to extinguish the right and defeasible title of the plaintiff, the claim at once reverted to the public domain, and any qualified person could relocate the ground. If there was not an abandonment, then the plaintiff's failure to do the representation for 1892, coupled with its failure to resume work in 1893 before Brogan in good faith made his location, constituted a forfeiture, extinguished the plaintiff's right, reinvested the government with full title, and simultaneously clothed Brogan with the rights flowing from a valid location. In either event—abandonment or forfeiture—the plaintiff ceased to own or have any interest in the claim.

Provided it does not negative the validity or impair the efficacy of the title which he purported to convey, or violate the covenants in his deed, the grantor, may acquire a title subsequently, and assert it against his grantee. (3 Washburn on Real Property (6th Ed.), p. 110, Sec. 1933; Tiedeman on Real Property, p. 551, Sec. 727, and cases there cited.) The purpose of the rules referred to is not to deprive the grantor of the right to become the owner of the property which he has conveyed. Abandonment was equivalent in effect to a deed by the plaintiff

surrendering the claim to the government; forfeiture was tantamount to such a deed, and to a grant from the government to Brogan conferring upon him the rights and privileges of a locator. The deed from McDermott to the plaintiff conveyed all the possessory right which McDermott held in that part of the mineral land of the United States covered by the Northwest lode claim, and also the title which McDermott might thereafter acquire by patent issued to perfect the title obtained by location and compliance with the law; the only title outstanding was that of the government; the plaintiff either surrendered by abandonment or lost by forfeiture, without the fault of McDermott, its defeasible title; if surrendered by abandonment, the estate of the plaintiff reverted to the government, and was merged in the paramount title; if lost by forfeiture through Brogan's location, there was a return and merger, and at the same moment of time a grant by the government to the new locator. As already observed, by abandonment an unpatented mining claim necessarily becomes part of the public domain; by forfeiture it became such for an instant only, the merger and new grant being simultaneous. The land embraced within the claim of the plaintiff was therefore part of the public mineral lands at the time Brogan located the Shamrock lode claim. It cannot reasonably be contended that, in the absence of fraud, the title acquired by McDermott from Brogan passed to the plaintiff. If A. (McDermott) conveys land to B. (plaintiff), and B. quitclaims to C. (the government), and C. conveys to D. (Brogan), and D. to A. (McDermott), certainly B. (plaintiff) will not be heard to say that when A. (McDermott) acquired title from D. (Brogan) it passed to B., or that A. (McDermott) is estopped. Brogan, having by his location acquired a title which was good as against the plaintiff, lawfully conveyed to McDermott, who acquired the title of the locator; and the fact that McDermott was at the time a stockholder and trustee or director of the plaintiff in nowise lessened his right so to purchase and hold the mining ground. The title obtained from Brogan did not inure to the benefit of the company.

The evidence was sufficient to justify the findings, and the

latter support the judgment. The only questions presented are those which we have discussed. The case seems to have been well and carefully tried by the learned judge of the district court.

The judgment and the order overruling the motion for a new trial are affirmed.

*Affirmed.*

Mr. Justice Milburn : I concur.

The Chief Justice, being disqualified, takes no part in the foregoing decision.