JOHANNES, RESPONDENT, *v.* DWIRE ET AL., DEFENDANTS; COX, APPELLANT.

(No. 7,108.)

(Submitted June 17, 1933. Decided June 30, 1933.)

[23 Pac. (2d) 971.]

*Messrs. Harris & Hoyt,* for Appellant, submitted a brief; *Mr. George G. Harris* argued the cause orally.

*Mr. Louis P. Donovan,* for Respondent, submitted a brief and argued the cause orally.

592

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The defendant, Glen M. Cox, has appealed from a decree quieting title in the plaintiff, R. J. Johannes, to certain oil royalty.

In 1927, J. T. Jarrett, owner, placed in escrow an assignment to Mark Dwire, of Shelby, of two and one-half per cent. land owner's royalty from oil-wells to be drilled on the Jarrett ranch in the Kevin field, in Toole county, with the understanding that, if Dwire should sell two per cent. royalty within thirty days, the remaining one-half per cent. would go to him as his commission. Dwire executed assignments of one-half of one per cent. royalty, in blank, and placed them in the hands of Dr. A. Howe, of Helena, for sale. Howe negotiated a sale to Johannes, who without investigation as to title, gave his check for $1,200 to Howe and received one of Dwire's assignments. Howe remitted to Dwire, who, being unable to dispose of the other two per cent. within the time limit, wired Jarrett, who lived in Oregon, for an assignment of the royalty sold. Jarrett complied; Dwire remitted the full amount received by him. Thus it transpired Dwire's assignment to plaintiff is of date April 30 and recorded May 4, while the Jarrett assignment to Dwire is of date May 3 and recorded May 6.

Cox secured a judgment against Dwire in the district court of Cascade county in 1926, and in 1932 secured an execution thereon, directed to the sheriff of Toole county, under which the royalty involved was levied upon, and Cox became the purchaser on execution sale. Thereupon plaintiff commenced suit against Dwire and Cox to quiet his title. Dwire and wife filed a disclaimer of any interest; Cox answered, denying plaintiff's title and alleging title in himself.

On the trial the plaintiff merely submitted the documents constituting his chain of title and rested; the answering defendant's entire proof consists of the judgment-roll of the Cascade county case and an instrument entitled "Transcript of Judgment," to which is affixed the certificate of the clerk

of the district court of Cascade county of date August 7, 1926, and which bears the legend, "Filed Aug. 8, 1926." In rebuttal, the plaintiff and Dwire explained the manner in which plaintiff acquired the royalty, as above outlined.

On the evidence thus adduced, the court declared that Howe acted as agent for Dwire, and that they both acted as brokers or agents for the vendor and for the vendee; that Dwire never acquired title to the royalty, but merely served as a conduit through which title passed from Jarrett to the plaintiff, and that, consequently, the lien of defendant's judgment never attached to· the royalty. The defendant challenges the sufficiency of the evidence to warrant the court's findings and its application of the law.

This court has recently held that an oil and gas lease takes the character of an estate in the land itself. "It is an interest in land" (*Williard* v. *Federal Surety Co.*, 91 Mont. 465, 8 Pac. (2d) 633, 635) ; for the purposes of this appeal we will assume that the property here involved is of the same character.

If the judgment was filed in Toole county in August, 1926, as contended, its lien would attach to any real estate which Dwire thereafter acquired during the life of the lien (sec. 9413, Rev. Codes 1921), but only after the debtor's title was disclosed of record (*McMillan* v. *Davenport*, 44 Mont. 23, 118 Pac. 756, Ann. Cas. 1912D, 984; *Isom* v. *Larson*, 78 Mont. 395, 255 Pac. 1049).

Dwire acquired paper title on May 3; it was disclosed of record on May 6, at which time the plaintiff's assignment was of record antedating the Dwire assignment by three days.

The defendant contends that the assignment could not pass after title acquired, as the granting clause describes the property sold or assigned as "all of my right, title and interest in and to one-half of one per cent. * * * royalty." This would probably be true under the rule laid down in *Hochsprung* v. *Stevenson*, 82 Mont. 222, 266 Pac. 406, but that case has been overruled in so far as it invoked technical rules for the construction of instruments, and this court

has declared that under the modern liberal rules of construction an instrument must be considered as a whole, in order to ascertain the intention of the parties. (*Krutzfeld* v. *Stevenson,* 86 Mont. 463, 284 Pac. 553.) Therein it is declared that explanatory clauses may be considered as a part of the granting clause and may enlarge or diminish the grant, so long as they deal with the identical property or interest described in the granting clause.

In the assignment from Dwire to Johannes we find a warranty clause prefaced by the statement: "I do hereby assign said royalty * * * and agree to warrant and defend the title to the same." The instrument is sufficient to pass after-acquired title in so far as this objection is concerned.

Whenever a person purports, by a proper instrument, to ██ grant real property to which he has no title, or under a defective title, and subsequently acquires title, "the same passes by operation of law to the grantee" (sec. 6867, Rev. Codes 1921; *Beck* v. *Felenzer,* 69 Mont. 592, 223 Pac. 499), and, while there is some authority to the contrary, notably Kansas (see *Bliss* v. *Brown,* 78 Kan. 467, 96 Pac. 945; *Leslie* v. *Harrison Nat. Bank,* 97 Kan. 22, 154 Pac. 209), the lien of a judgment attaches only to the precise interest which the debtor has, actually and effectively, in the property, and, if the debtor parts with a title before he acquires it, or even by the same act or transaction by which he acquires it, under the doctrine of instantaneous seizin there is no moment of time when the lien of the judgment could have attached; it is as though the title had passed direct from his grantor to his grantee. (34 C. J. 590, 591, and cases cited.)

This being the situation of the parties and the condition of the title at the time of the purported execution sale, we need not consider the other questions argued. Johannes held not only the equitable title but the legal title.

The judgment is affirmed.

Mr. Chief Justice Callaway and Associate Justices Angstman, Stewart and Anderson concur.