MITCHELL ET AL., RESPONDENTS, v. HANNAH ET AL., APPELLANTS.

No. 8886

Submitted May 13, 1949. Decided July 23, 1949.

208 Pac. (2d) 812

Mr. E. J. McCabe, Great Falls, for appellants. Mr. McCabe argued orally.

Mr. M. J. Thomas and Mr. Ralph J. Anderson, both of Helena, for respondents. Mr. Anderson argued orally.

MR. JUSTICE BOTTOMLY:

Action by A. B. Mitchell and Anne Mitchell, husband and wife, plaintiffs against Joseph Pestal, Stuart W. Hannah, Gustave E. Lindholm and Mary C. Lindholm, defendants, to adjudicate the title and interests of the parties to the same forty-acre tract of land involved in Mitchell v. Pestal et al., Cause No. 8876, 123 Mont. 142, 208 Pac. (2d) 807, 2 St. Rep. 91. The

cases were tried together in the district court. An appeal was taken by defendants in this case and by the plaintiff in Cause No. 8876, supra. The evidence was practically identical in each case and the two appeals were argued together in this court.

Plaintiff A. B. Mitchell died after commencement of this suit and plaintiff Anne Mitchell, as his executrix, was substituted.

At the start of the trial it was stipulated by counsel that all the exhibits offered in this case may be considered in the other one.

The evidence was all documentary—no oral evidence was offered or given.

Patent to the land involved here, together with other lands was issued to A. B. Mitchell in 1918. Thereafter on December 24, 1938, A. B. Mitchell and Anne Mitchell, his wife, conveyed these lands by warranty deed to the Billings Used Pipe and Supply Company.

On July 5, 1939, A. B. Mitchell and Anne Mitchell conveyed the lands by warranty deed to Walter B. Slagle, and also on the same day, July 5, 1939, A. B. Mitchell and Anne Mitchell executed an assignment of 1% royalty of all of the oil and all of the gas produced and saved from a forty-acre tract of the land, described as the south half of the south half of section 21, township 15 north of range 30 east, M. P. M., to Walter B. Slagle.

On the same day, July 5, 1939, Walter B. Slagle assigned this 1% royalty to Joseph Pestal.

On November 15, 1939, Walter B. Slagle executed a warranty deed to the patented quarter section including the described forty-acre tract, to Joseph Pestal.

On March 12, 1940, Joseph Pestal executed a warranty deed to the quarter section to A. B. Mitchell, which deed contained the following exception and reservation: "Excepting and reserving to the grantor all of the right, title and interest in and to 1% royalty of all the oil and gas produced and saved from the S½ S½ NE¼, sec. 21, Twp. 15 N., Rge. 30 E., conveyed to grantor by W. B. Slagle under date of July 5th, 1939."

The execution of the deed with reservation is alleged in the

complaint and admitted by defendants in their separate answers.

On May 29, 1946, Joseph Pestal and Rose Pestal, his wife, executed an assignment of the 1% royalty of all of the oil and of all of the gas produced and saved from the described forty-acre tract to Stuart W. Hannah.

The assignment of royalty from A. B. Mitchell and Anne Mitchell to Walter B. Slagle provides that said grantors "do hereby sell, assign, transfer, convey and set over unto the said assignee, all of * * * right, title, and interest in and to One Per-cent (1%) Royalty of all of the oil and of all the gas produced and saved from the hereinafter described lands, located in the County of Garfield & Petroleum * * * to-wit:

"The South-half (S½) of the South-half (S½) of the North-east Quarter (NE¼) of Section Twenty-one (21) in Township Fifteen (15) North Range Thirty (30) East M. P. M. Garfield and Petroleum Countys, Montana, and embracing 40 acres, more or less, according to the Government official survey thereof:

"To Have and to Hold unto the said assignee, his heirs, ad-ministrators, and assigns said royalty as above set forth, the said oil and gas so produced and saved from said lands to be de-livered free of cost to the royalty owner in the pipe lines serving said premises or tanks erected thereupon for the purpose of storing such products, together with the rights, privileges and benefits to be derived therefrom; and I do hereby assign said royalty under the lease now covering said lands as well as any lease, or leases, that may be hereafter made covering said prem-ises, and agree to warrant and defend the title to the same and that I have lawful authority to sell and assign said royalty."

The above "Assignment of Royalty," and the one from Slagle to Pestal as well as that from Pestal and wife to Hannah are in the same form.

We have held in Mitchell v. Pestal et al., No. 8876, supra, that the after acquired title of Anne Mitchell inured to the benefit of the defendant Stuart W. Hannah.

The question here presented is what interest does Hannah

have, if any, and if so, is it a royalty interest, or is it an interest in the oil and gas in place.

The decree of the district court adjudges that the interest here involved "is an interest in oil and gas in place as a tenancy in common and not as a royalty interest."

Plaintiff contends that the rights of defendants, if any, are to be measured by the reservation in the deed from Pestal to A. B. Mitchell, the execution and recitals of which are admitted in the pleadings, and that the various assignments of royalty had theretofore been merged in the fee simple title of plaintiff, and that Pestal thereafter could not convey any greater estate than he had reserved to himself in his deed to Mitchell, asserting that Marias River Syndicate v. Big West Oil Co., 98 Mont. 254, 38 Pac. (2d) 599, is decisive that this interest is as tenants in common and not a royalty interest.

Defendants contend that any after acquired interest in the lands involved, either of A. B. Mitchell or Anne Mitchell, inures to the benefit of Slagle and his successor in interest, Stuart W. Hannah, and that the reservation in the deed from Pestal to Mitchell, "Excepting and reserving to the grantor all of the right, title and interest in and to 1% royalty of all of the oil and gas produced and saved from the S½ of the S½ of the NE¼ of sec. 21, Twp. 15 N. of R. 30 E., conveyed to the grantor by W. B. Slagle, under date of July 5, 1939," is a reservation of a royalty interest and not a reservation of an interest in the oil and gas in place.

In Rist v. Toole County, 117 Mont. 426, 159 Pac. (2d) 340, 344, 162 A. L. R. 406, this court, in considering an assignment of royalty, identical in form with those here involved, said: "The authorities emphasize that it is only by virtue of his ownership of the minerals in place that the lessor is entitled to exact a royalty of part of the oil and gas produced, but that it is neither necessary nor usual for him to convey any part of the mineral title in order to transfer the corresponding royalty interest. Thus where only a royalty interest is purported to be transferred there is no justification for an attempt to read into

the grant another and greater interest. This is true whether the express recital is of a royalty interest in general, or of a royalty interest under an existing lease, or of a royalty interest under any and all leases thereafter given. In fact, where the instrument, as here, expressly purports to include royalties under future leases, it is logically impossible to infer the conveyance of mineral interests. For, as noted above, it is impossible for the grantor to make leases covering mineral interests theretofore conveyed to others, and futile for him to attempt the assignment of the corresponding royalties. It follows that the express assignment of royalty in future leases utterly negatives an intent to convey title to the assignee so as to make him a tenant in common, with full authority over his own share of the ownership. It is only where no title, but only a royalty interest is transferred, that a reference to royalty under future leases can have any meaning.''

Again in the Rist Case, supra, this court quoted with approval from Riffel v. Dieter, 159 Kan. 628, 157 Pac. (2d) 831, 836, as follows: ''Clearly the primary purpose of the instrument was to convey to Dieter one-half of the *royalty* rights of the Riffels in any production on the 280 acres. * * * Nowhere in the instrument are there any provisions which could be construed as conveying to Dieter any interest in the minerals in place.'' Exactly the same is true as to the purpose and effect of the royalty assignments here involved.

In the Rist Case, discussing the holding in the Marias River Syndicate Case, supra, relied on by plaintiff, this court said: ''In the Marias River Syndicate Case the owner conveyed the lands with reservation of a fractional '*interest* and royalty in and to all oil and gas and other minerals of whatsoever nature, *found in or located upon or under* said land or premises above described, or that may be produced therefrom.' The final phrase, 'or that may be produced therefrom,' is the only part of the reservation referring to production or severance of minerals.'' The court there held, and rightly so, that such a reser-

vation created a separate interest in the oil and gas and the owners of the respective interests became tenants in common.

Here, however, we have a differently worded reservation, which expresses a different purpose and intent, ''excepting and reserving to the grantor all of the right, title and interest in and to 1% royalty of all the oil and gas *produced* and *saved*'' from the described forty-acre tract *''conveyed to the grantor by W. B. Slagle under date of July 5, 1939.''* (Emphasis supplied.)

This reservation defines the word ''royalty,'' as all of the *oil and gas produced and saved from the described lands,* referring to the royalty ''conveyed to grantor by W. B. Slagle under date of July 5, 1939,'' so that there can be no doubt as to the intention of the parties. It was the clear intent of the parties to reserve a royalty interest, and that interest was the interest conveyed to said grantor by Slagle on July 5, 1939. There are no words in this exception or reservation that indicate any other intention. There are no words used to indicate a reservation of the oil and gas in and under or upon the said lands, as in the Marias River Syndicate Case, nor any indication that the grantor was reserving any minerals in place.

What we have said in Mitchell v. Pestal et al., No. 8876, supra, ██ relative to after acquired title and the equities involved applies with equal force to the case at bar.

It follows from what we have said that the district court erred in not finding and adjudging that the defendant Stuart W. Hannah is the owner of an undivided 1% royalty of all of the oil and gas produced and saved from the described forty-acre tract, to be delivered free of cost to the said Stuart W. Hannah in the pipe line serving said premises or tanks erected thereupon for the purpose of storing such products, together with the rights, privileges and benefits to be derived therefrom.

The judgment is reversed with directions to enter decree in conformity with this opinion.

Mr. Chief Justice Adair and Associate Justices Angstman, Metcalf and Freebourn, concur.