MITCHELL, Appellant, v. PESTAL et al., Respondents.

No. 8876

Submitted May 13, 1949. Decided July 23, 1949.

208 Pac. (2d) 807

Mr. M. J. Thomas and Mr. Ralph J. Anderson, both of Helena, for appellant. Mr. Anderson argued orally.

Mr. E. J. McCabe, Great Falls, for respondents. Mr. McCabe argued orally.

MR. JUSTICE BOTTOMLY:

This is a suit in equity to quiet title in land described as: Lots one, two, seven and eight, sometimes described as the northeast quarter of section twenty-one in Township 15 North of Range Thirty East, M. P. M., in the counties of Petroleum and Garfield.

Judgment and decree was entered on the 28th of April 1948, quieting title to said lands in the plaintiff and appellant, Anne Mitchell, "subject only to the one percent interest owned by Stuart W. Hannah as tenant in common and not as the owner of a royalty interest in and to the oil and gas in and under the south half of the south half of the northeast quarter of section

21 in township 15 north of range 30 east, M. P. M.," being a forty-acre tract.

All the evidence in this case is documentary.

Anne Mitchell apeals from the part of the judgment in favor of the defendant Stuart W. Hannah.

The defendants Stuart W. Hannah, Gustave E. Lindholm and Mary C. Lindholm appeal from the part of the judgment of April 28, 1948, awarding to the defendant Stuart W. Hannah a one per cent interest in common in and to the oil and gas in and under the south half of the south half of the northeast quarter of section 21, Township 15 North of Range 30 East, M. P. M., being the aforesaid forty-acre tract.

The contention of appellant Mitchell is that respondents have no interest of any kind in the above described land for the reason that at the time of their executing the warranty deed and assigning the 1% royalty to one Slagle, on said forty-acre tract, neither of the grantors had any interest in the land to convey and that the court erred in finding and concluding and entering judgment and decreeing that respondent Hannah was the owner of a 1% interest in the oil and gas in and under the said forty-acre tract.

The contention of respondents Stuart W. Hannah et al. is that the court erred in finding, concluding and decreeing that the interest of respondent Hannah was a 1% interest in the described forty-acre tract and was that of a tenant in common of the oil and gas in and under the described tract instead of decreeing that the interest of Hannah therein was a 1% royalty of all oil and gas produced and saved from said land to be delivered free of cost to Hannah in the pipeline serving the premises or tanks erected thereon for the purpose of storing such products, together with the rights, privileges and benefits to be derived therefrom, and that the after acquired title by Anne Mitchell passed by operation of law to her grantee under the provisions of section 6867, R. C. M. 1935.

The land first described above was originally homesteaded by Ainsley B. Mitchell, referred to throughout the record as A. B.

Mitchell. Patent was issued to Ainsley B. Mitchell and filed for record September 25, 1918.

Thereafter and on December 24, 1938, A. B. Mitchell and Anne Mitchell, his wife, executed a warranty deed conveying the land to Billings Used Pipe and Supply Company, which deed was filed for record January 19, 1939. Billings Used Pipe and Supply Company, by its co-partners, conveyed said lands by quit claim deed dated January 31, 1939, to Howard C. Gee, with no reservations, recorded July 25, 1940.

A. B. Mitchell and Anne Mitchell by warranty deed conveyed said lands to Walter B. Slagle, said deed dated July 5, 1939, filed for record October 7, 1939, and on July 5, 1939, A. B. Mitchell and Anne Mitchell conveyed to Walter B. Slagle a 1% royalty of all the oil and gas produced and saved from the described forty-acre tract, ''To have and to hold unto said assignee, his heirs and administrators, and assigns said royalty as above set forth, the said oil and gas so produced and saved from said lands to be delivered free of costs to the royalty owner in the pipe lines serving said premises or tanks erected thereupon for the purpose of storing such products, together with the rights, privileges and benefits to be derived therefrom; and I do hereby assign said royalty under the lease now covering said lands as well as any lease, or leases, that may be hereafter made covering said premises, and agree to warrant and defend the title to the same and that I have lawful authority to sell and assign said royalty.

''In witness whereof, we have hereunto set our hand and affixed seal this 5th day of July 1939.

''A. B. Mitchell (Seal)

''Anne Mitchell (Seal)''

The foregoing instrument was duly notarized and filed for record September 11, 1943, and recorded in volume 63 at page 220, records of Petroleum county.

W. B. Slagle, on July 5, 1939, assigned to Joseph Pestal by the same worded assignment a 1% royalty of all the oil and gas produced and saved from the same forty acres of land, which instrument was filed for record on the 17th day of September 1943.

Walter B. Slagle, on November 15, 1939, conveyed by warranty deed to Joseph Pestal, the whole of the northeast quarter of section 21, township 15 north of range 30 east, M. P. M.

On March 12, 1940, Joseph Pestal conveyed by warranty deed to A. B. Mitchell all the land described as lots 1, 2, 7 and 8, sometimes known as the northeast quarter of section 21, township 15 north of range 30 east, M. P. M., in the counties of Petroleum and Garfield, which deed was recorded March 16, 1940, and containing the following reservation: "Excepting and reserving to the grantor all of the right, title and interest in and to 1% royalty of all of the oil and gas produced and saved from the S½ of the S½ of the NE¼ of sec. 21, N. of R. 30 E., conveyed to the grantor by W. B. Slagle under date of July 5, 1939."

Howard C. Gee and Rena S. Gee, his wife, on July 30, 1940, conveyed to Anne Mitchell in her own right, by bargain and sale deed, the northeast quarter of section 21, township 15 north of range 30 east, M. P. M., which deed was filed for record August 2, 1940.

Joseph Pestal and Rose Pestal conveyed to Stuart W. Hannah, by same worded instrument as the foregoing assignments of royalty, 1% royalty of all the oil and gas produced and saved from the described forty-acre tract, "to have and to hold unto the said assignee, his heirs, administrators and assigns said royalty as above set forth, the said oil and gas so produced and saved from said lands to be delivered free of cost to the royalty owner in the pipe lines serving said premises or tanks erected thereupon for the purpose of storing such products, together with the rights, privileges and benefits to be derived therefrom; and I do hereby assign said royalty under the lease now covering said lands as well as any lease, or leases, that may be hereafter made covering said premises, and agree to warrant and defend the title to the same and that I have lawful authority to sell and assign said royalty." This instrument was recorded June 8, 1946.

Neither the plaintiff nor any of the defendants appeared as witnesses.

The defendants in their answer allege: "That these answering

defendants disclaim any right, title or interest in and to the premises described in plaintiff's complaint other than the interest in and to one per cent (1%) royalty of all the oil and gas produced and saved, delivered free of all costs in tanks and pipe lines located on or serving said premises * * *''

The foregoing allegations of the defendants' answer are admitted by plaintiff's reply.

The question presented is, whether the after acquired title now in Anne Mitchell passes by operation of law to her grantee and his successors, and if so, what was the interest that so passed to her grantee and ultimately to Stuart W. Hannah.

On July 5, 1939, when A. B. Mitchell and Anne Mitchell executed and delivered an assignment to Walter B. Slagle of a 1% royalty, neither A. B. nor Anne Mitchell had any title thereto or interest therein, nor did Anne Mitchell have any dower interest therein. This instrument of assignment nevertheless purported to convey good title to said royalty and concludes with these words, ''and agree to warrant and defend the title to the same and that I have lawful authority to sell and assign said royalty.''

This instrument is sufficient to pass after acquired title. Johannes v. Dwire, 94 Mont. 590, 593, 594, 23 Pac. (2d) 971.

Section 6867, R. C. M. 1935, provides: ''Where a person purports by proper instrument to grant real property in fee simple, and subsequently acquires any title, or claim of title thereto, the same passes by operation of law to the grantee, or his successors.''

''It is a general rule, supported by many authorities, that a deed purporting to convey a fee simple or a lesser definite estate in land and containing covenants of general warranty of title or ownership will operate to estop the grantor from asserting an after acquired title or interest in the land, or the estate which the deed purports to convey, as against the grantee and those claiming under him. One of the most frequent ways of expressing this rule is that the subsequently acquired title inures

to the benefit of the grantee, this form of expression usually meaning that the title passes by way of estoppel or, at least, that whether the title has actually passed or not the grantor is estopped from asserting the after-acquired title or interest. The rule is the same whether the warranty of title is expressed in the deed or is implied by statute." 19 Am. Jur., "Estoppel," sec. 16, pp. 614, 615; 16 Am. Jur., "Deeds," sec. 340, pp. 632, 633; Pure Oil Co. v. Miller-McFarland Drilling Co., 376 Ill. 486, 34 N. E. (2d) 854, 135 A. L. R. 567; Moore v. Crawford, 130 U. S. 122, 9 S. Ct. 447, 32 L. Ed. 878.

Our statute, section 6867, R. C. M. 1935, is a legislative codification of the general rule and in harmony with the same.

This court has stated: "We think that the after-acquired title rule as prescribed by section 6867, Revised Codes, becomes applicable in cases where, at the time of the grant, the title of the grantor was either defective or lacking, and subsequent to the grant, the grantor obtained title or some portion thereof. Thus that section is made applicable where a person purports to grant real property in fee simple, and subsequently acquires any title or claim of title thereto, the same passes by operation of law to the grantee." Rowell v. Rowell, 119 Mont. 201, 174 Pac. (2d) 223, 226, 168 A. L. R. 1141.

The doctrine of the passing of after acquired title is based on estoppel. McDermott Min. Co. v. McDermott, 27 Mont. 143, 69 Pac. 715; Grasswick v. Miller, 82 Mont. 364, 267 Pac. 299; Midland Realty Co. of Minnesota v. Halverson, 101 Mont. 49, 52 Pac. (2d) 159.

In the Halverson Case, supra, this court quoted as follows from Van Rensselaer v. Kearney, 11 How. 297, 13 L. Ed. 703: "The principle deducible from these authorities seems to be, that, whatever may be the form or nature of the conveyance used to pass real property, if the grantor sets forth on the face of the instrument, by way of recital or averment, that he is seised or possessed of a particular estate in the premises, and which estate the deed purports to convey; or, what is the same thing, if the seisin or possession of a particular estate is affirmed in the deed,

either in express terms or by necessary implication, the grantor and all persons in privity with him shall be estopped from ever afterwards denying that he was so seised and possessed at the time he made the conveyance. The estoppel works upon the estate, and binds an after-acquired title as between parties and privies. The reason is, that the estate thus affirmed to be in the party at the time of the conveyance must necessarily have influenced the grantee in making the purchase, and hence the grantor and those in privity with him, in good faith and fair dealing, should be forever thereafter precluded from gainsaying it. The doctrine is founded, when properly applied, upon the highest principles of morality, and recommends itself to the common sense and justice of everyone. And although it debars the truth in the particular case, and therefore is not infrequently characterized as odious, and not to be favored, still it should be remembered that it debars it only in the case where its utterance would convict the party of a previous falsehood; would be the denial of a previous affirmation upon the faith of which persons had dealt, and pledged their credit or expended their money. It is a doctrine, therefore, when properly understood and applied, that concludes the truth in order to prevent fraud and falsehood, and imposes silence on a party only when in conscience and honesty he should not be allowed to speak.'' Midland Realty Co. of Minnesota v. Halverson, supra [101 Mont. 49, 52 Pac. (2d) 161] ; see also Johannes v. Dwire, supra; Rowell v. Rowell, supra.

In the case of Younger v. Moore, 155 Cal. 767, 772, 103 Pac. 221, 224, the court stated: ''It is fundamental that where a grantor, by proper instrument, purports to grant property in fee simple, and subsequently acquires any title or claim of title thereto, the same passes by operation of law to the grantee or his successors. The effect of such deed as matter of law is the same as if it were written upon the face that the grantor conveyed all the estate which he then possessed, or which he might at any time thereafter acquire. Civ. Code, sec. 1106 * * *.''

In dealing with such actions each case is considered in the

light of the specific facts and circumstances developed, and a court of equity regards the substance and not the form.

The salutary principle that if a vendor conveys land or an interest in land to which he has no title, and to which he afterward acquires the title, the title thus acquired shall inure to the benefit of his vendee, and he is thereby estopped to assert the same as against his grantee, cannot be defeated in equity by any circuitous method of attempting to dishonor or disclaim his covenants.

Plaintiff now comes into a court of equity and, in effect, says: It is true that I agreed to convey to Slagle 1% royalty interest in all of the oil and all of the gas produced and saved from the described forty-acre tract of land, said oil and gas so produced and saved from said lands to be delivered free of cost to the royalty owner in pipe lines serving said premises or tanks erected thereon for the purpose of storing such products, together with the rights, privileges and benefits derived therefrom, and agree to warrant and defend title to the same and that I have lawful authority to sell and assign said royalty, and I reduced that agreement into my solemn conveyance in writing and received therefor a good and valuable consideration; but now, Slagle and his assigns take nothing and I retain the consideration paid; I therefore now ask this court in equity and good conscience, to quiet my title to said land as against any right which my assignee has under my conveyance. The position taken is shocking to a court of equity which considers that "No one can take advantage of his own wrong," sec. 8746, R. C. M. 1935 and the provisions of section 6867, R. C. M. 1935. Such position cannot be maintained on sound rules of law and equity.

Under the evidence, circumstances and the law in this case, any title or interest acquired by Anne Mitchell in and to the 1% royalty of all the oil and of all the gas produced and saved from the lands described subsequent to the assignment with warranty of said 1% royalty, which Anne Mitchell and A. B. Mitchell executed on the 5th day of July 1939, to Walter B. Slagle, which

is here in dispute, inured to her grantor Walter B. Slagle and his successor in interest, Stuart W. Hannah.

The interest which was so conveyed by Anne Mitchell and A. B. Mitchell to Walter B. Slagle and which inures to his successor Stuart B. Hannah, is as set forth in each of said conveyances, to-wit: One percent royalty of all the oil and of all the gas produced and saved from the lands described to be delivered free of cost to the royalty owner in the pipe lines serving said premises or tanks erected thereupon for the purpose of storing such products, together with the rights, privileges and benefits to be derived therefrom. See Rist v. Toole County, 117 Mont. 426, 436, 159 Pac. (2d) 340, 162 A. L. R. 406.

Accordingly that portion of the judgment and decree which provides, ''subject only to the one per cent interest owned by Stuart W. Hannah as a tenant in common and not as the owner of a royalty interest in and to the oil and gas in and under the south half of the south half of the northeast quarter of section 21 in township 15, North of Range 30 East of the Montana Principal Meridian'' and that portion of said judgment and decree which provides, ''That the defendants and each of them and all of them, are hereby perpetually enjoined and restrained to in anywise claim any right, title, claim or interest other than the defendant, Stuart W. Hannah's one percent interest as a tenant in common, as aforesaid, in and to the real estate described as the South Half of the South Half of the Northeast Quarter of Section 21 in Township 15 North of Range 30 East of the Montana Principal Meridian, or any part thereof adverse to the right, title and interest of the plaintiff herein'' is reversed, and the cause remanded to the district court with directions to strike the above quoted parts of said judgment and decree and enter judgment therein in conformity herewith.

Mr. Chief Justice Adair and Associate Justices Angstman, Freebourn and Metcalf, concur.