*270 JUSTICE RICE
dissenting.
¶26 I agree with the Court’s implicit conclusion that the subdivision’s Protective Covenants are determinative of the dispute here. However, I believe a close review of the Covenants requires a different outcome.
¶27 The introductory paragraph of the Covenants states that “all” of the sites and lands within the subdivision are subject to “the protective covenants, conditions, restrictions and reservations hereinafter set forth.” No one contests that the Bordas property was subject to each and every condition and requirement set forth in the Covenants.
¶28 In the second introductory paragraph of the Covenants, these concepts are expanded further. This provision states that “with prime consideration for the ecology and esthetics of the property,” the developer has established a plan for the “protection, maintenance, development and improvement of said land,” and therefore, the Covenants were for the “mutual benefit of all sites” and shall run with the land and be applicable to all “owners, their successors and assigns.” The question then becomes what conditions were imposed upon every site and every owner by these Covenants in order to fulfill the developer’s plan to maintain and improve the property.
¶29 Paragraph 2 of the Covenants provides as follows:
Declarant has caused a non-profit corporation to be formed, The Shining Mountains Virginia City Ranches Assoc., to administer all matters regarding surface water rights; location and procedures applicable to the drilling of water wells within the various easements; overseeing and maintaining of all common areas, including the upkeep, grading and maintenance of the major traverse roads, the existing ranch fencing around the perimeter of the property, and the exterior lighting at each residence or outbuilding, overseeing, maintaining and stocking the lakes, streams and other water bodies within the property with trout; the receipt and expenditures of monies through such entity; and architectural approval after January 1, 1985, or if sooner provided.
Further provisions of the Covenants require that The Shining Mountains Virginia City Ranches Association (“Association”) be responsible for approval of ancillary buildings (Paragraph 5) and for time of construction (Paragraph 8).
¶30 Thus, the Covenants established, for purposes of the subdivision, the Association and its role. The Covenants imposed, as a condition upon all property and owners, the power and duty of the Association, “for the mutual benefit of all sites,” to administer all water matters, all *271 easement and drilling matters, oversee the water bodies and trout stocking, to maintain all common areas, roads, fencing and each residence’s exterior lighting, and to exercise architectural approval. In other words, this was the developer’s plan mentioned above-that the Association would, for all owners, ensure an ecological and esthetic environmental setting. To carry out this plan, the Covenants enabled the Association to receive and make expenditures.
¶31 It is correct that assessments are not mentioned in the Covenants. That omission has given rise to the conflict today. However, despite that omission, it cannot be denied that the existence of the Association and its functions within the subdivision are Covenants which run with the Bordas property and which bind the Bordases. They are subject to the Association’s authority, but further, they have received the benefits the Association provides because of those Covenants: the roads, fences, common areas, bodies of water, fish, and even the exterior lighting at the Bordas property. This enhances their property. The Covenant which allows the Association to collect revenues may be ambiguous, but it can have only one logical interpretation: to authorize the Association to collect the revenues from the owners necessary to fulfill its duty to provide benefits to those same owners. Any other interpretation is an absurdity.
¶32 Affirming the District Court binds the Bordases and their property to the Association and its authority, and mandates that the Association provide the Bordases with the benefits of ownership provided by the Covenants, but bars the Association from collecting revenue from the owners it must serve, even though the power to collect is granted by the Covenants. However, this Court has rejected the use of narrow, technical rules for construction of real estate instruments, and has declared instead that such instruments “must be considered as a whole, in order to ascertain the intention of the parties.” Johannes v. Dwire (1933), 94 Mont. 590, 593, 23 P.2d 971, 972.1 believe the intent of the parties here, given the Covenants as a whole, was clear. The Bordases are to be paying the Association for the benefits they are receiving. I would reverse.